LANDON L. DAY, as Administrator of the Estate of ANTHONY W. DAY, Deceased, Appellant, *v.* OHRMAN E. JOHNSON, Respondent.

Fourth Department, January 6, 1943.

*C. R. Crosby* and *Warren W. Johnson* for appellant.

*Clarence G. Pickard* for respondent.

DOWLING, J. On November 15, 1941, about five P. M., the plaintiff's intestate, Anthony W. Day, a child of four years, one month and seven days, while crossing Willard street, about ninety feet west of the intersection of Eagle and Willard streets, Jamestown, N. Y., was run down by the defendant's automobile and so seriously injured that he died on November 17, 1941, and this action was brought to recover the damages. At the close of all the evidence, the court directed a verdict dismissing the complaint on the ground that the plaintiff had failed to show negligence on the part of the defendant and that the plaintiff's intestate was guilty of contributory negligence as a matter of law. From the judgment dismissing the complaint on the merits, the plaintiff has appealed.

Except as to the question of the speed of the defendant's car and the manner of its operation at the time of the accident, the facts are not much in dispute. Willard street runs east and west. Eagle street intersects Willard street just east of the point of the accident. At the time of the accident, the defendant was driving westerly on the northerly side of Willard street and down a six and seven-tenths per cent grade. The crest of this grade was a block or a block and a half east of Eagle street. Willard street is a thickly populated, residential street, thirty feet wide between curbs and is paved with asphalt. November 15th was a bright, clear day and the pavement was dry.

The intestate lived with his parents on the northerly side of Willard street next to a grocery store located on the corner of Willard and Eagle streets. At the time of the accident, two cars were parked on the north side of Willard street, one in front of the grocery store and the other a car length to the west of the first car.

John Lindquist, a witness for the defendant, testified, in substance, that he resided on the south side of Willard street almost opposite the grocery store; that at five P. M. he visited the grocery

store, purchased a box of snuff, came out of the grocery store, stopped to open the box of snuff, looked down the street, saw the intestate come across Willard street from the south to the north side, saw him stop behind one of the parked cars; that he kept watching that car; that " finally I seen the little boy, he started across the street again, and I seen the car come and went just like that (illustrating) ;" that he started to run across the street again and " he was just about in the middle of the street when the automobile hit him." " Q. Well, who got there first, or what happened in that interval? A. Well, that was nip and tuck, I guess. I seen the boy first and then the car afterwards. Q. Were they practically together? A. Close to it;" that he did not see the car until " just when it hit the boy, that is all. * * * I seen the boy first, then I seen the car coming." That he did not see the defendant's car when it passed him as he " was watching that boy behind that car." The defendant testified, in substance, that he was driving down Willard street " approximately twenty-five miles an hour;" that " it was starting to get dusk." That as he reached Eagle street he was going about the same speed; that he saw the cars parked on the north side of Willard street; that " as I came abreast of the car that was farthest down the hill, simultaneously I felt a thud against the car and saw a boy in front of me. * * * I saw a boy in front of the car. * * * I realized I had hit something, and applied the brakes of my car as quickly as I could, and stopped the car." On cross-examination the defendant testified that he knew that Willard street, in the vicinity of the accident, was quite thickly settled, houses on each side of the street and the occupants of many of the houses have children. " Q. Playing up there? A. Yes; " that when he was on the steepest part of the grade he might have applied the brakes to keep the car from speeding up but that he took his foot off the brake when the grade started to level out. " Q. In other words, on the grade you were perfectly conscious that there was danger there and that you should keep the car under control, were you not? A. Yes; " that when he struck the boy he put his brakes on as hard as he could; that he was doing his best to stop the car up to the time that it collided with the Pratt car; that he could stop his car at a speed of twenty-five miles per hour in forty feet skidding distance and that it would take over forty feet before he could get his foot on the brake. Raymond Hammerstedt, called by the defendant, testified that he was riding in the front seat with the defendant; that the grade was steeper east of Eagle street; that the defendant was traveling approximately between twenty and twenty-five miles per hour as they started coming down the hill; that he

did not see the child until he heard the thud and that the defendant applied the brakes " almost right after that, and I saw the body when it rolled off the car. When he applied the brakes the car skidded to the left and came in contact with another parked car; " that the child rolled off the car when the defendant's car came to a stop; that defendant's car travelled between thirty and forty feet after striking the boy.

The plaintiff established that the brakes on the defendant's car were in good mechanical order after the accident and that defendant's car, travelling twenty-five miles per hour at the place of the accident, could be stopped in about twenty-five or thirty feet after the brakes have been fully applied and that the car could be stopped within about forty feet including reaction time. The plaintiff also established that the defendant's car skidded ninety-one feet and two inches before it collided with the Pratt car and that the boy rolled down the street ahead of the skidding car and that his body came to rest in the street about thirty feet west of the defendant's and the Pratt cars; that the Pratt car was damaged in the collision; that an ordinance of the city of Jamestown limited the speed of motor vehicles in the city to twenty-five miles per hour; that the intestate was a healthy, normal boy and that he had never attended kindergarten.

The court having directed a verdict in favor of the defendant, the plaintiff was entitled to the most favorable inferences which could be drawn from the evidence. (*Touris* v. *Fairmont Creamery Company*, 228 App. Div. 569, 570.) With this rule in mind, the jury could have found the facts to be that the defendant was driving his car down a steep grade on a thickly populated street at a rate of speed far in excess of that provided for in said speed ordinance; that he did not have his car under control; that no warning to the intestate of the approach of the defendant's car was given; that the defendant was not observant of the street ahead or of the rights of the intestate; that had the car been operated in a prudent manner and in obedience to the said speed ordinance and to paragraph a of subdivision 1 of former section 56 of the Vehicle and Traffic Law, the intestate could have crossed the street in safety; that the defendant was negligent; that his negligence caused the accident and that the intestate was free from contributory negligence. The case, therefore, was for the jury and it was error to take it from them. We also think that the court committed reversible error in excluding the testimony as to certain stopping tests made by the police at the scene of the accident with the defendant's car.

(*Saladow* v. *Keystone Transportation Co., Inc.,* 241 App. Div. 161.)

The defendant had the right of way but he was not relieved from the duty of exercising due care for the safety of the intestate. (Vehicle and Traffic Law, art. VI, § 85, subd. 4.) " In crowded centers the danger is proportionate to the speed, and there seems to be no good reason why the care should not be measured by the danger." (*Baker* v. *Close,* 204 N. Y. 92, 95.) " ' Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly.' " (*Union Pacific Railway Co.* v. *McDonald,* 152 U. S. 262, 277.) The defendant did not alter the speed of his car or give any warning of his approach as he passed the parked cars. The jury could have found him negligent in this respect, especially since there was no traffic in the street at that time to divert his attention. (*Mere* v. *Hull,* 248 App. Div. 935.) It was not unlawful for the intestate to be in the street and the jury might properly have found that, if the defendant " had been sufficiently vigilant and careful, he would have seen the child " in time to avoid injuring him. (*Birkett* v. *Knickerbocker Ice Company,* 110 N. Y. 504, 507; *Moebus* v. *Herrmann,* 108 N. Y. 349, 352; *Murphy* v. *Orr,* 96 N. Y. 14, 17.) The jury might also have found the defendant negligent in too literally adhering to his right of way at the place of the accident. (*Tedla* v. *Ellman,* 280 N. Y. 124, 132.)

The intestate, four years, one month and seven days old, was presumably *non sui juris*. At that age, his capacity to exercise care in the presence of danger was for the jury. (*Conrow* v. *Snyder,* 215 App. Div. 603, 606; *Meyer* v. *Inguaggiato,* 258 App. Div. 331, 332, leave to appeal denied, 258 App. Div. 1055, 282 N. Y. 811; *Lee* v. *City Brewing Corp.,* 279 N. Y. 380, 388.) The jury might have found that the intestate was incapable of personal negligence. (*Camardo* v. *New York State Railways,* 247 N. Y. 111, 116.) " The question of the contributory negligence of the deceased was also one of fact for the jury, even though the deceased was *sui juris.*" (Citing cases.) (*Trudell* v. *New York Rapid Transit Corporation,* 281 N. Y. 82, 86.)

The judgment should be reversed on the law and facts and a new trial should be granted, with costs to the appellant to abide the event.

All concur. Present — CUNNINGHAM, TAYLOR, DOWLING, HARRIS and McCURN, JJ.

Judgment reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.