CHARLES BUSH, BY CHARLES BUSH, HIS GUARDIAN AD LITEM, CHARLES BUSH, INDIVIDUALLY, AND DORIS BUSH, PLAINTIFS-APPELLANTS, v. NEW JERSEY & NEW YORK TRANSIT CO., INC., INTER-CITY TRANSPORTATION CO., INC., DEFENDANTS-RESPONDENTS, AND STANLEY J. MALORGIO, DEFENDANT.

Argued May 4, 1959—Decided June 30, 1959.

*Mr. Harry Chashin* argued the cause for plaintiffs-appellants (*Messrs. Marcus & Levy*, attorneys).

*Mr. Archibald Kreiger* argued the cause for defendants-respondents.

The opinion of the court was delivered by

SCHETTINO, J. Appeal is from a judgment of the Appellate Division (52 *N. J. Super.* 513 (1958)) affirming a Superior Court, Law Division, judgment in favor of defendant upon a jury's verdict of no cause of action. This is an infant pedestrian-motor bus negligence case for personal injuries on behalf of the infant plaintiff and for the parents' *per quod.* We granted certification. 29 *N. J.* 62 (1959). The infant plaintiff (hereinafter referred to as "plaintiff") was 4 years, 1 month and 19 days old on the date of the accident, June 13, 1956. At that time the Bush family consisted of the parents, plaintiff, and three other children whose ages were three years, two years and six months. They resided at 67 Chadwick Street, Paterson, approximately one block from a heavy traffic intersection of Main and Mary Streets, the point where plaintiff received his injuries. On this day, Mrs. Bush sent plaintiff and his three-year-old sister out to play on their tricycles. The children wandered a block away to the above mentioned intersection. Apparently plaintiff left his sister and the two tricycles on the near side of the intersection and crossed the street. The evidence indicates that the boy was returning to his sister and the tricycles when he either ran into the rear, or was struck by the front, of the corporate defendant's bus. During the course of the trial plaintiffs took a voluntary dismissal as to the driver of the bus, Stanley J. Malorgio.

There was no eyewitness to the accident. Defendant's bus was proceeding in the southbound lane of Main Street.

There was a group of telephone company employees working in a manhole at the opposite side of the intersection in the northbound lane. A civil engineer placed this manhole well over on the easterly side of the street. A member of the Paterson Police Department investigated the incident and testified that when he saw plaintiff, plaintiff was lying in the road alongside the left rear wheel of the bus and that the bus was "parked in the intersection, in the middle of the road," and there were no skidmarks. He further testified that he interrogated the bus driver, and that when he asked the driver what had happened, the driver told him that he was driving south on Main Street, he had a green light, he was going through the intersection when he heard a thump, he immediately stopped the bus, and when he got out, he saw the plaintiff lying there alongside the left rear side of bus.

The deposition of the bus driver was read into evidence. He stated that he was driving southerly on the proper side of the road, that there was "Lots of clearance" between the bus and the manhole, that he looked into his rear view mirror to see if he had cleared the manhole area because of "force of habit," that he did not see the child before the impact, that through his rear view mirror he saw the child bounce off the bus right at the intersection and that it took him "about thirty-five or forty feet" to stop the bus.

On direct examination he testified that he was proceeding southerly on Main Street, that when he was at Weiss Street, a block before Mary Street, he observed a red traffic light facing him at the intersection of Main and Mary Streets, that he was travelling at a speed of from 10 to 12 miles per hour and that the light turned green for him shortly before he reached Mary Street. Malorgio stated that he looked to the corner on his right for prospective passengers and, seeing none, he continued straight through the intersection at the same speed. After entering the intersection he looked into his rear view mirror to determine whether he had "cleared the men" working at the manhole although there

was admittedly plenty of clearance and there was no evidence of men actually working on the surface. He had not seen plaintiff at any moment before he saw the boy bounce off the rear left wheel of the bus. He again stated that he brought the bus to a stop in 35-40 feet. The bus was 32-35 feet long. Malorgio emphatically denied telling the police officer that he found the child lying alongside the left rear of the bus.

A repairman working at the manhole testified that the child was lying within a bus length of the bus, approximately 35 feet, and was in the northerly, or opposite, traffic lane. The witness stated further that he examined the rear of the bus and found a large, fresh black mark on the left rear tire where the dust of the road had been wiped from it.

Another manhole workman testified that he saw the boy lying very near the manhole in the northerly lane and saw the bus a block away at the next bus stop.

At the conclusion of the testimony and after the denial of a motion for judgment by defendant, the trial court instructed the jury that the care required of an infant old enough to be capable of negligence is that care that is usually exercised by persons of similar age, judgment and experience and that in determining whether a child old enough to be capable of negligence has been guilty of contributory negligence "it is necessary to take into consideration the age of the child, its experience and capacity to understand and avoid dangers to which it is exposed in the actual circumstances and situation under investigation." Plaintiff's counsel objected to the instruction and to the submission to the jury of the question of contributory negligence. He argued that under the proofs plaintiff could not have been guilty of contributory negligence and that the court should decide the question of contributory negligence in plaintiff's favor rather than submit it to the jury as a question of fact.

The jury returned a verdict of "No cause for action in favor of the defendant." It is, of course, impossible to determine whether the jury found the total absence of negli-

gence by defendant or contributory negligence by the infant plaintiff.

In the Appellate Division plaintiff argued that the trial court erred in submitting the issue of contributory negligence to the jury because there was no evidence in the record to rebut the presumption of continuing incapacity (*Dillman v. Mitchell,* 13 *N. J.* 412 (1953)), and that, therefore, the presumption compels the particular conclusion in the absence of evidence *contra.* *In re Blake's Will,* 21 *N. J.* 50, 58 (1956); *Silver Lining, Inc. v. Shein,* 37 *N. J. Super.* 206 (*App. Div.* 1955); *Morgan, "Presumptions,"* 10 *Rutgers L. Rev.* 512 (1956). It treated plaintiff's argument to be that the issue of contributory negligence should have been withheld from the jury as a matter of law because of plaintiff's age and not that the legal rule charged was erroneous. The Appellate Division rejected plaintiff's arguments and affirmed the judgment. It held that the question of plaintiff's capacity for contributory negligence was disputable and it was properly submitted to the jury.

On this appeal plaintiff's counsel argues that there is a rebuttable presumption that this 4 years, 1 month, 19-day-old child is incapable of contributory negligence and that the presumption of continuing incapacity has not been rebutted and therefore "the trial court was legally precluded from charging contrary to the presumption."

Defendant argues that any error concerning the question of contributory negligence could not have been prejudicial as there is no evidence in the case that would warrant a finding of primary negligence on the part of defendant. Plaintiff has filed a reply brief directed solely to defendant's argument that there is no evidence of negligence.

 It is manifest that if there was no evidence, direct or circumstantial, upon which the jury could have premised a finding of negligence on the part of defendant's bus driver, any error concerning a charge of contributory negligence could not be prejudicial. *Egan v. Erie R. Co.,* 29 *N. J.* 243, 251 (1959); *Cohen v. Borough of Bradley Beach,* 135

*N. J. L.* 276, 279 (*E. & A.* 1946) ("Where actionable negligence is not attributable to defendant, the question of 'contributory negligence' is immaterial."); *Freschi v. Mason,* 108 *N. J. L.* 272, 276–277 (*E. & A.* 1931). *Cf. Maccia v. Tynes,* 39 *N. J. Super.* 1 (*App. Div.* 1956). Therefore, if the record were to present no evidence of defendant's negligence, then the judgment would be affirmed. *Van Derbeek v. Conlon,* 41 *N. J. Super.* 574, 580 (*App. Div.* 1956) ("Assuredly an error in instructions of law as against an unsuccessful plaintiff is not prejudicial where he manifestly fails basically to support his alleged cause of action by the facts."). This result would follow even if defendant had not argued the complete absence of negligence. *Cf. Cloyes v. Delaware Tp.,* 23 *N. J.* 324, 336–337 (1957); *Meislrich v. Casino Arena Attractions, Inc.,* 54 *N. J. Super.* 25, 30 (*App. Div.* 1959), certification granted 29 *N. J.* 582 (1959). We think that the conflicting testimony as to the position of the plaintiff in relation to the bus after it came to a stop presented a jury question on the issue of negligence. *Petrosino v. Public Service Coordinated Transport,* 1 *N. J. Super.* 19 (*App. Div.* 1948); *Baker v. Kaplan,* 1 *N. J. Super.* 160 (*App. Div.* 1949). Thus, if there was error in the submission of the question of contributory negligence to the jury, or in the correctness of the charge, such error would be prejudicial.

We next consider the question whether it is proper to allow the jury to consider the contributory negligence of this plaintiff.

■ No definitive answer has yet been found for the problem of the capacity of children of tender years to act negligently. See *Annotations,* 107 *A. L. R.* 4; 174 *A. L. R.* 1080; 5–A *Am. Jur.* 729; *Prosser on Torts* (*2nd ed.* 1955), p. 127 *et seq.;* 2 *Harper & James, The Law of Torts* (1956), p. 924 *el seq.; Restatement, Torts,* §§ 283, 488; *Shulman, "The Standard of Care Required of Children,"* 37 *Yale L. J.* 618 (1927); *Wilderman, "Contributory Negligence of Infants,"* 10 *Indiana L. J.* 427 (1935); *Note,* 21 *Col. L. Rev.*

697 (1921); *Charbonneau v. MacRury,* 84 *N. H.* 501, 153
*A.* 457, 73 *A. L. R.* 1266 *(Sup. Ct.* 1931); *Eckhardt v.
Hanson,* 196 *Minn.* 270, 264 *N. W.* 776, 107 *A. L. R.* 1
*(Sup. Ct.* 1936); and *Tyler v. Weed,* 285 *Mich.* 460, 280
*N. W.* 827 *(Sup. Ct.* 1938) (in which an excellent dis-
cussion of the conflicting views is presented in the majority
and dissenting opinions). There appear to be two prev-
alent views, the "Illinois rule," which holds that there is
a conclusive presumption of incapacity up to age seven, and
the "Massachusetts rule" which holds that there is a rebut-
table presumption of incapacity up to age seven.

Our courts formerly adhered to the Illinois rule, *i. e.,*
conclusive presumption of incapacity. *Schneider v. Winkler,*
74 *N. J. L.* 71 *(Sup. Ct.* 1906). But subsequent cases
followed the Massachusetts rule. *Baker v. Public Service
Ry. Co.,* 79 *N. J. L.* 249 *(Sup. Ct.* 1910); *Arivabeno v.
Nuse,* 12 *N. J. Misc.* 729 *(Sup. Ct.* 1934). *Cf. Hellstern
v. Smelowitz,* 17 *N. J. Super.* 366, 377 *(App. Div.* 1952)
(a case involving a child of 5 years, 3 months and 15 days)
wherein Judge Jayne thoroughly reviewed the authorities
and stated that "the capacity of an infant to understand
and to avoid dangers to which it is exposed in a given set
of circumstances does not depend so much upon the chrono-
logical age of the infant as upon the infant's psychological
development." The opinion outlined the law of this State
to be that the degree of care required of a child old enough
to be capable of negligence is such as is usually exercised
by persons of similar age, judgment and experience. The
court stated that if, after a consideration of the age, experi-
ence and capacity of the child to understand and avoid the
risks and dangers to which it was exposed in the actual
circumstances and situation of the case, fair-minded men
might honestly differ as to whether the child failed to
exercise that degree of care that is usually exercised by
persons of similar age, judgment and experience, the ques-
tion should be submitted to the jury, but that if fair-minded
men could not conclude that the child had the capacity to

be negligent, the court should determine the question of incapacity.

This court considered the problem in *Dillman v. Mitchell,* 13 *N. J.* 412 (1953). In that case the infant was 5½ years old. He was killed as he was crossing a street intersection. Plaintiff there argued for a conclusive presumption of incapacity and contended that the question of contributory negligence was erroneously submitted to the jury. We rejected the conclusive presumption rule and stated that (13 *N. J.* at *pages* 415–416):

"* * * A child may be so young as to be incapable of negligence as a matter of law, but the age comes when it is a question of fact, *although there be a presumption of continuing [incapacity]."* (Emphasis supplied)

We reaffirm the rebuttable presumption of incapacity test as stated in *Dillman v. Mitchell.*

The question of capacity or incapacity is simply a factual inquiry and is whether the particular child has the capacity to be contributorily negligent, *i. e.,* act unreasonably under the circumstances, in light of the age, training, judgment and other relevant factors which apply to the particular child. And the test to be applied is that applicable to any other question of fact. The trial judge is the first to view the matter and if he is of the opinion that the child, after a consideration of all of the relevant factors, does not have the capacity to be contributorily negligent and that reasonable men could not disagree, he then decides the question of capacity as a matter of law. But if the trial judge feels that reasonable men can disagree on the question of incapacity, even though he himself would decide for or against incapacity, then he must allow the jury to decide the question of incapacity. The jury, if it finds that the particular child at the time of the accident had the capacity to be negligent, must then decide whether the particular child was negligent. Essentially the question is handled similarly to any other question of fact and will be reviewed

in the same manner. *Cf. Hoff v. Natural Refining Products Co.,* 38 *N. J. Super.* 222, 235 *(App. Div.* 1955).

The exigencies of everyday trial court practice render it necessary to delineate at what age a trial court should allow the jury to determine the question of capacity or incapacity, absent any special attribute possessed by the child. Most courts have drawn the line at some point for purposes of certainty and trial expediency. But the line is not easily drawn. We note that "The age of a child is of significance primarily as a mark or sign of his mental capacity to understand and appreciate the perils that may threaten his safe being. In all the jurisdictions the courts definitely recognize that at least at some point during the early stages of infancy a child is incapable of contributory negligence as a matter of law, but there is a wide diversity of judicial opinion as to a definite or fixed age that is sufficient to constitute a child *sui juris,* so as to charge it with contributory negligence." *Walston v. Greene,* 247 *N. C.* 693, 102 *S. E. 2d* 124, 126 *(Sup. Ct.* 1958).

This "wide diversity" is pointed up by reference to conflicting authorities. Courts have held children to be incapable of contributory negligence as a matter of law up to the age of ten years. *Lever Bros. Co. v. Slapleton,* 313 *Ky.* 837, 233 *S. W. 2d* 1002 *(Ct. App.* 1950) (six years); *Beasley v. United States,* 81 *F. Supp.* 518 *(D. C. S. C.* 1948) (ten years); *Morris v. Boleware,* 228 *Miss.* 139, 87 *So. 2d* 246 *(Sup. Ct.* 1956) (eight years); *Ruka v. Zierer,* 195 *Wis.* 285, 218 *N. W.* 358, 361 *(Sup. Ct.* 1928) (five years, three months: "* * * while it is held in a few jurisdictions that a child of that age is capable of contributory negligence, the overwhelming weight of authority is to the effect that a child of that age is conclusively presumed to be incapable of contributory negligence."); *Grogan v. York,* 93 *N. H.* 184, 38 *A. 2d* 295 *(Sup. Ct.* 1944) (five years, six months); *Paschka v. Carsten,* 231 *Iowa* 1185, 3 *N. W. 2d* 542 *(Sup. Ct.* 1942) (six years); *Lehman v. Patterson,* 298 *Ky.* 360, 182 *S. W. 2d* 897 *(Ct. App.* 1944)

(six years); *Dixon v. Stringer,* 277 *Ky.* 347, 126 *S. W. 2d* 448 *(Ct. App.* 1939) (seven years); *Shill v. New Orleans Public Service,* 175 *So.* 113 *(La. Ct. App.* 1937) (six years); *Eden v. Klaas,* 166 *Neb.* 354, 89 *N. W. 2d* 74 *(Sup. Ct.* 1958) (five years); *Shaske v. Hron,* 266 *Wis.* 384, 63 *N. W. 2d* 706, 707 *(Sup. Ct.* 1954) (four years, eight months: "* * * it has been generally considered that a child under five and one-half years of age is incapable of either contributory or primary negligence."); *Mink v. Cincinnati Street Ry. Co.,* 99 *Ohio App.* 123, 131 *N. E. 2d* 606 *(Ct. App.* 1954) (four years); *Guscinski v. Kenzie,* 282 *Mich.* 204, 275 *N. W.* 820 *(Sup. Ct.* 1937) (five years); *Nagy v. Balogh,* 337 *Mich.* 691, 61 *N. W. 2d* 47 *(Sup. Ct.* 1953) (four years, nine months); *Law v. Hemmingsen,* 89 *N. W. 2d* 386 *(Iowa Sup. Ct.* 1958) (four years); *Rainwater v. Boatright,* 61 *So. 2d* 212 *(La. Ct. App.* 1952) (five years); *Schmidt v. Allen,* 303 *S. W. 2d* 652 *(Mo. Sup. Ct.* 1957) (four years); *Eaton v. R. B. George Investments,* 152 *Tex.* 523, 260 *S. W. 2d* 587 *(Sup. Ct.* 1953) (three years, eight months); *Kelly v. Hunsucker,* 211 *N. C.* 153, 189 *S. E.* 664 *(Sup. Ct.* 1937) (four years, six months); *Green v. Bowers,* 230 *N. C.* 651, 55 *S. E. 2d* 192 *(Sup. Ct.* 1949) (four years); *Oviatt v. Camarra,* 210 *Or.* 445, 311 *P. 2d* 746, 751 *(Sup. Ct.* 1957) ("We have held that a child under five years of age is incapable of negligence as a matter of law."); *Womack v. Preach,* 64 *Ariz.* 61, 165 *P. 2d* 657 *(Sup. Ct.* 1946) (four years, six months); *Locke v. Ford,* 54 *Ga. App.* 322, 187 *S. E.* 715 *(Ct. App.* 1936) (four years, five months); *Hogan v. Etna Concrete Block Co.,* 325 *Pa.* 49, 188 *A.* 763 *(Sup. Ct.* 1936) (five years) and *Mahan v. State,* 172 *Md.* 373, 191 *A.* 575 *(Ct. App.* 1937) (four years plus). In *Johnson v. Bay City,* 164 *Mich.* 251, 255, 129 *N. W.* 29, 31 *(Sup. Ct.* 1910) the court said:

"* * * We believe, however, that all reasonable minds would agree that an infant, but little more than five years of age, could not have sufficient intelligence to be charged with negligence, either as a matter of law or as a matter of fact. It may be difficult,

perhaps impossible, to point out the exact age at which the question becomes one for the jury, but it is, we think, clear that it has not arrived at five years and four months."

Referring again to a child of five years and four months the court in *Von Saxe v. Barnett*, 125 *Wash.* 639, 645, 217 *P.* 62, 64 (*Sup. Ct.* 1923) said:

"At such an age a child is a creature of impulse and impetuosity. It has no habits of deliberation and forethought. While at play it might remember none of the warnings that had been given."

For cases holding children under three incapable, see 174 *A. L. R.* at *page* 1116; between three and four, 174 *A. L. R.* at *page* 1117; between four and five, 174 *A. L. R.* at *page* 1119; at age five, 174 *A. L. R.* 1123; and see generally 107 *A. L. R.* 4.

But there are also authorities, although not extensive, holding that very young children may be capable of being contributorily negligent without referring to the proof that the infant, in fact, had training and experience evidencing a capacity to understand and to avoid the danger of injury in the circumstances of the case. *Bruno v. Belmonte*, 252 *Minn.* 497, 90 *N. W.* 2d 899 (*Sup. Ct.* 1958) (five years); *Colligan v. Reilly*, 129 *Conn.* 26, 26 *A.* 2d 231 (*Sup. Ct. Err.* 1942) (four years, four months); *Rutkowski v. Connecticut Light & Power Co.*, 100 *Conn.* 49, 52, 123 *A.* 25 (*Sup. Ct. Err.* 1923) (five years); *Milliken v. Weybosset Pure Food Market*, 71 *R. I.* 312, 44 *A.* 2d 723 (*Sup. Ct.* 1945) (The child, there two years, four months of age, "must exercise such care as one of its age is ordinarily expected to exercise, * * *."); *Camardo v. New York State Rys.*, 247 *N. Y.* 111, 159 *N. E.* 879 (*Ct. App.* 1928) (four years, 11 months); *Day v. Johnson*, 265 *App. Div.* 383, 39 *N. Y. S.* 2d 203 (*App. Div.* 1943) (four years, one month, seven days); *United Rys. & Electric Co. v. Carneal*, 110 *Md.* 211, 231, 72 *A.* 771 (*Ct. App.* 1909) (three years); *State, to Use of Kolish v. Washington, B. & A. Electric R. Co.*, 149 *Md.* 443, 459, 131 *A.* 822 (*Ct. App.* 1926) (four years plus); *State,*

*for Use of Taylor v. Barlly,* 216 *Md.* 94, 140 *A.* 2*d* 173, 177 (*Ct. App.* 1958) (five years); *National City Development Co. v. McFerran,* 55 *A.* 2*d* 342, 345 (*Mun. Ct. App. D. C.* 1947) (five years). And compare the Massachusetts cases of *Dennehy v. Jordan Marsh Co.,* 321 *Mass.* 78, 71 *N. E.* 2*d* 758, 760 (*Sup. Jud. Ct.* 1947) (four years, five months) and *Capano v. Melchionno,* 297 *Mass.* 1, 7 *N. E.* 2*d* 593 (*Sup. Jud. Ct.* 1937) (4 years, 11 months).

▇ After a consideration of the authorities we adopt the view that a child of less than seven years of age is rebuttably presumed to be incapable of negligence and hence the issue may not be submitted to the jury in the absence of evidence of training and experience from which the jury could infer that the child was capable of understanding and avoiding the danger of injury involved in the circumstances of the case. *Cf. Riggs v. Watson,* 77 *Ga. App.* 62, 47 *S. E.* 2*d* 900, 905 (*Ct. App.* 1948). We note that in New Jersey a child is required to enter school upon reaching seven, although a child may enter school at five as most of them do. (*N. J. S. A.* 18:14–14). (See extensive discussion of the many studies concerning the maturity of children and the reference to the statutory school age in *Tyler v. Weed, supra*).

▇ If evidence of capacity is introduced, then the trial judge must determine if such evidence is sufficient so that reasonable men might disagree concerning the question of whether the child had the capacity to perceive the risk and avoid the danger to himself. If the answer is in the affirmative and if there is further evidence that the child did not act in a manner which would be expected of a child of similar age, judgment and experience, then the question of contributory negligence must be submitted to the jury. The trial court must instruct the jury that there is a presumption of incapacity, that it is first to determine whether there is such evidence sufficient to overcome the presumption of incapacity and to render the child capable of being contributorily negligent, and, then, if the jury finds that the child is capable, it must determine whether the child was

contributorily negligent under the facts of the particular case.

Defendant argues that this particular child had certain training and experience which rendered him above average, *i. e.,* he attended Sunday School and church, he was enrolled in kindergarten seven months after the accident, he was allowed to play alone, he was entrusted with the care of his younger sister and he was described by the treating physician as being remarkably calm and cooperative. Defendant also refers to the fact that the infant was in court at the trial and was observed by the judge and jury. The Appellate Division agreed with defendant. 52 *N. J. Super.* 513, 518 (1958). Suffice it to say that the evidence outlined is not sufficient to distinguish this child from the average child of his age.

Additional factors which might be introduced to show that a child was capable of negligence whereas the average child of the same age would not be are, for example, his attending school, his being taught traffic safety regulations, his experience in caring for himself in traffic, and any other evidence of the child's physical and mental capabilities. Compare *Shulman, supra,* at *page* 620, and the factors deemed pertinent in *Dillman, supra* (13 *N. J.* at *pages* 416–417).

As the plaintiff in the instant case was 4 years, 1 month and 19 days of age, and as there was no evidence of capacity for contributory negligence, that issue should not have been submitted to the jury.

Reversed, costs on appeal to abide the outcome of the retrial.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.