65 N.J. Super. 234 (1961)
167 A.2d 423
WALLACE H. DILLARD, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR JEROME DILLARD, AN INFANT, PLAINTIFFS-APPELLANTS,
v.
NICHOLAS P. FUE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 1960.
Decided January 24, 1961.
*235 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Ronald Berman argued the cause for plaintiffs-appellants (Messrs. Warren & Stein, attorneys).
Mr. Kenneth J. Dawes, Jr. argued the cause for defendant-respondent (Messrs. Dawes and Dawes, attorneys; Mr. Dawes, Jr., of counsel).
The opinion of the court was delivered by PRICE, S.J.A.D.
In an automobile negligence action plaintiffs seek to reverse a judgment entered on a jury verdict of no cause for action in the Superior Court, Law Division. Recovery of damages for personal injuries suffered by the minor plaintiff Jerome Dillard, a pedestrian, was sought. His father, Wallace H. Dillard, sued per quod.
Plaintiffs contend that the trial court erred in denying their motion, at the end of the entire case, to strike the defense of contributory negligence asserted against the minor plaintiff, whose age at the time of the accident was five years and three months. The court left the issue of contributory negligence to the jury for decision.
Plaintiffs also challenge, as inadequate, the trial court's charge to the jury with reference to a section of the Motor *236 Vehicle and Traffic Act (N.J.S.A. 39:4-98(b), and, in addition, contend that the verdict was against the weight of the evidence.
The accident occurred on Southard Street in Trenton on March 30, 1959 at 6:30 P.M. It was a dark, rainy evening. Jerome, attempting to cross from the western to the eastern side of the street, suffered severe personal injuries when struck by an automobile operated by defendant in a northerly direction on said street. At the time of the accident the child was alone. He lived at 27 Southard Street in a house located on the western side thereof. Shortly prior to the accident he had been with his parents at a laundromat across the street from their house and had wandered away from them and returned to his home. They did not miss him until after the accident occurred. A neighbor of plaintiffs testified that, although she had not seen defendant's car strike the boy, she was seated at the time in an automobile parked in front of 33 Southard Street and, immediately prior to the accident, had seen Jerome come "out of his house" and then run easterly across the sidewalk "toward the street."
Defendant's version of the accident was that he was proceeding northerly on Southard Street, a two-lane road, at about 10 to 15 miles per hour. His headlights were on low beam and his windshield wipers functioning. He described the accident as follows:
"* * * I just was proceeding up the street, and all of the sudden I more or less caught a glimpse of something, and I wasn't sure, and I hit it almost instantaneously at the time that I had seen it, and I realized I hit the boy and I slammed my brakes on immediately and turned to the right to avoid going over him, * * *."
Defendant further testified that he did not see the boy until the latter was directly in front of the car; that the youngster was struck by the front of the vehicle at a point between the left front headlight and the center of the hood. The boy was thrown about ten feet and was rendered unconscious *237 by the impact. He had crossed the southbound lane of Southard Street and was in the act of crossing the northbound lane when he was struck.
We turn to an examination of the evidence on the basis of which the trial court held that the question of the boy's capacity for contributory negligence was for the jury. The proofs show that Jerome had attended kindergarten since September 1958. The school was a few blocks from his home. His eight-year-old brother took him to and from school each school day. The boys had to cross streets between their home and school. "Patrol boys" were stationed at the street corners. On cross-examination Jerome's mother testified that he was a "normal" child; that she had never taught him about crossing streets, but had told "him not to go in the street." She added that "off and on before the accident" he had disobeyed "[j]ust like kids get out and be playing, they haul off and jump up and run out in the street."
Plaintiff, Wallace Dillard, testified that initially the boy's mother and an eight-year-old brother accompanied Jerome to and from school "until we figured that the sons got used to going together," and thereafter only Jerome's older brother accompanied him each school day. He also testified that prior to the accident Jerome occasionally attended Sunday school, but was accompanied on that walk by an adult and by his brother. The father stated that he had told Jerome "not to go in the street and don't play in the street," and on occasion, when he had seen the boy in the street, had given "him a lecture on not to go in the street, because he is liable to get hit by an automobile."
The foregoing constituted the entire proofs as to the child's capacity.
The trial court recognized the rule enunciated in Bush v. New Jersey & N.Y. Transit Co., Inc., 30 N.J. 345, 358 (1959), "that a child of less than seven years of age is rebuttably presumed to be incapable of negligence and hence the issue may not be submitted to the jury in the absence *238 of evidence of training and experience from which the jury could infer that the child was capable of understanding and avoiding the danger of injury involved in the circumstances of the case." The court also noted that initially it was its duty to determine whether the evidence of the infant's capacity to perceive the risk and avoid the danger to himself was such that reasonable men might disagree with reference thereto. Bush, supra, 30 N.J., at p. 358.
As above noted, the court held that the proofs in the instant case were such as to require that the jury decide the capacity of the infant plaintiff and, if such capacity were found to exist, to then determine "whether or not the child in this instance was contributorily negligent." In this the court erred. We determine that the proofs in the case at bar were "not sufficient to distinguish" Jerome "from the average child of his age." Bush, at p. 359. There was no proof that he had ever been "taught traffic safety regulations" or that he had any "experience in caring for himself in traffic." Bush, supra, at p. 359. Contrary to the situation disclosed in Dillman v. Mitchell, 13 N.J. 412, 416-417 (1953), Jerome had no experience in going to and from school alone or to the store alone. The proofs negate the suggestion that he had the concept of highway dangers and of the degree of care requisite for his own safety sufficient to rebut the presumption of incapacity for contributory negligence. Plaintiffs' motion to strike the asserted defense of contributory negligence should have been granted.
As the judgment of the trial court must be set aside for the reasons above expressed, it is unnecessary to resolve the remaining points advanced by plaintiffs on this appeal. However, we note, as above stated, that plaintiffs objected to the court's charge to the jury with reference to N.J.S.A. 39:4-98(b), relating to speed of motor vehicles operating in a residential district. Plaintiffs contend that under the conditions existing at the time of the accident the court should have directed the jury's attention to another and qualifying portion of N.J.S.A. 39:4-98, requiring that *239 the "driver of every vehicle shall * * * drive at an appropriate reduced speed * * * when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions."
In view of the prospective retrial of this case we express the view that it would have been appropriate for the trial court, in referring to the aforesaid statutory provision, to have referred also to the above-quoted qualifying requirement appearing in the same section. In the instant case the physical factors, including the width of the street, the presence of parked cars on one side thereof, the adverse weather conditions, and defendant's own testimony as to visibility, made reference to such qualification peculiarly appropriate.
The judgment of the trial court is reversed and a new trial granted, costs to abide the outcome.