88 N.J. Super. 1 (1965)
210 A.2d 425
MICHAEL I. ZUCKERBROD, AN INFANT, BY HIS GUARDIAN AD LITEM, SAUL ZUCKERBROD, AND SAUL ZUCKERBROD AND SYLVIA ZUCKERBROD, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
HARVEY BURCH, JR., HARVEY E. BURCH AND ENCARNACION BURCH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 1965.
Decided May 21, 1965.
*2 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Frank Fink argued the cause for plaintiffs (Mr. David B. Geltzeiler, attorney).
Mr. Charles V. Webb, Jr. argued the cause for defendants (Mr. Aaron Dines, on the brief; Messrs. Gaffey & Webb, attorneys)
*3 The opinion of the court was delivered by GAULKIN, S.J.A.D.
The infant plaintiff Michael, then 7 1/2 years old, was injured by a metal rod thrown by defendant Harvey Burch, Jr. (hereafter Harvey), then 5 1/2 years old. Michael and his parents sued Harvey and his parents for the resulting damages. Their action was dismissed at the end of the case, and they appeal.
One count of the complaint alleged, as against Harvey, that he "did negligently, carelessly and recklessly propel and throw the rod." Against Harvey's parents the complaint alleged that, having "notice and knowledge of his prior propensities" to throw things and strike other children, they "negligently, carelessly and recklessly supervised and controlled" Harvey, as a result of which he threw the rod and injured Michael. The pretrial order stated:
"* * * Plaintiffs contend that infant defendant, without any justifiable cause or reason, threw a sharp metal rod at the infant plaintiff, which struck him in the right eye. Plaintiffs allege negligence of the defendant in unjustifiably throwing the metal object and failing to take careful and proper precautions to avoid striking the infant plaintiff."
As to Harvey's parents, the pretrial order repeated the allegations of the complaint.
The trial court dismissed the complaint as to Harvey on the ground that plaintiffs failed to produce evidence sufficient to go to the jury to rebut the presumption that he did not have the capacity to recognize and abide by any standard of care, and therefore he could not be adjudged negligent. It dismissed the complaint as to the parents on the ground that there was insufficient proof of their negligence. We affirm as to the parents but reverse as to Harvey.
Michael testified that he, Bobby Muzyka (Bobby) and Harvey were playing a game called "knights in armor" on the lawn of Harvey's house. He described the game as follows: "We make believe we have little swords, and we were fighting against each other * * * we play fight though, we didn't *4 punch, or anything like that." He said he didn't remember whether they had any sticks or "anything like a sword" but he answered "no" to defendant's question, on cross-examination, whether "throwing something towards your feet" was part of the game.
Bobby went home, but Michael and Harvey continued the game. Then Harvey went into the garage of his home, picked up the metal rod, came to the front steps and, after saying to Michael "You asked for it," he threw the rod toward Michael, who was then standing "in the middle of the lawn." Michael testified that he and Harvey had no argument; that when Harvey went into his house, Michael considered the game as "still continuing"; throwing a rod was not part of the game, and he did not know why Harvey threw it. He said Harvey had never thrown anything at him before. While Michael was being taken for medical attention, Harvey said to him, "I'm sorry."
Harvey's mother, called as a witness by plaintiff, testified that Harvey had previously been involved in incidents "involving throwing of objects, stones," and that she had spoken to him on several occasions about it. When asked what she had said to him, she answered: "Like I have always told him, he shouldn't throw things and that little boys shouldn't do that, that although they might hit him, he should not throw back." When asked whether Harvey understood these instructions she answered, "I imagine he did."
Mrs. Muzyka, Bobby's mother, testified that she lived "three doors away and across the street" from the Burches and had seen Harvey "just about every day" for about two years before the accident. Harvey played with the Muzyka children. She said she considered Harvey "a bright boy" and "above average." However, she said Harvey was "always playing with rocks" and there had been many occasions, before the accident, when she had taken rocks and sticks away from Harvey. She had seen Harvey throw rocks at children many times, but she herself had never seen Harvey hit anyone with a rock. She testified: "I told him this particular time `I *5 don't want you playing with the children because somebody is going to get hurt. You really shouldn't play with rocks, you can get hurt, too.' So his mother came down to see why the children weren't playing with Harvey. I told her. She was very sympathetic, she was very nice to me and she told me she was punishing Harvey, and she talked to Harvey, she spanked him, brought him home and put him to bed."
Mrs. Muzyka told of an episode when Harvey bloodied "the Lyle boy" with a thrown rock; of another when he hit her son with a rope; and of still another when Harvey scratched a three-year-old's face with a branch, for which Harvey said he was sorry, but excused himself by saying "he just wouldn't get out of my way."
Mrs. Muzyka testified that on one occasion Harvey took her son Kevin's tricycle. She told Kevin (younger than Harvey) to go back for the tricycle while she watched. She described what happened. "So he went up and asked for his bicycle and Harvey hit him with his fist and knocked him down on the lawn. Harvey said to him `If you come on my property I'm going to knock you on your  rear,' but he didn't say rear." She said that on occasion she had seen other children throwing rocks, or with sticks in their hands, but Harvey was the only one "I had trouble with."
Another neighbor, Mrs. Fossett, testified that her son Gary was hit in the eye with a stick. After Harvey admitted that he did it, his grandfather spanked him. On another occasion Gary came home crying, with welts on his back. He accused Harvey; Mrs. Fossett told Mrs. Burch, and the latter punished Harvey.
The testimony established that Harvey was an only child. Both his parents worked and he was left in charge of his aged grandparents, who lived with the Burches.
There may be circumstances in which a parent is responsible for the tort of his son. Mazzilli v. Selger, 13 N.J. 296 (1953); Restatement, Torts, § 316 (1934); Harper and Kime, "The Duty To Control the Conduct of Another," 43 Yale L.J. 886, 893 (1934). However, there was no evidence *6 of any such circumstances in the case at bar. There was no evidence whatever to implicate the father or even to show that he knew of Harvey's propensities. As to the mother, what was she to do? She spoke to Harvey, warned him and punished him, as did his grandfather. Harvey could not be kept away from rocks, sticks or other objects, or from other children, unless he was locked up or sent away. His condition was not such that it demanded such a drastic remedy, or constant supervision. Therefore, the case against the parents was properly dismissed.
However, these very involvements in episodes of throwing things and striking other children; the instructions, warnings, pleadings and punishments which he received, and his attitudes and reactions in connection with the episodes, including not only his expressions of belligerence but those of apology, were enough in our judgment to take to the jury the issue of Harvey's capability to be culpably negligent with reference to the happening in the case at bar.
In Bush v. New Jersey & New York Transit Co., Inc., 30 N.J. 345 (1959) the court said:
"* * * we adopt the view that a child of less than seven years of age is rebuttably presumed to be incapable of negligence and hence the issue may not be submitted to the jury in the absence of evidence of training and experience from which the jury could infer that the child was capable of understanding and avoiding the danger of injury involved in the circumstances of the case." (at p. 358)
The court also said that the test to be applied was whether "the particular child has the capacity to * * * act unreasonably under the circumstances, in light of the age, training, judgment and other relevant factors which apply to the particular child." (at p. 354)
Professor Harry Shulman has set forth what such "other relevant factors" may be, in "The Standard of Care Required of Children," 37 Yale L.J. 618 (1928), in which he says:
"In one case or another, the courts have named, in diverse combinations the following qualities which are to be individualized: age, ability, alertness, appreciation, capability, capacity, comprehension, discernment, *7 discretion, development, education, experience, intelligence, judgment, knowledge, maturity, reason, sex, understanding. Age is included in all the combinations. Usually the combination consists of three qualities; and the combination,  age, intelligence and experience is the most frequent one.
If a child is unusually intelligent, or experienced, or well informed for one of his age, he is held to the exercise of greater caution than the ordinary child with the intelligence, experience, and knowledge common to that age. The quality of his conduct must be commensurate with his superiority. Many of the cases found really go no further than that (though their language is general to the effect that the qualities of intelligence, experience and knowledge are always to be individualized in the case of children). An increase in the requirements on the ground of superiority does not, however, negative the existence of a minimum standard to which children must conform. Nor is the principle peculiar to cases of infants. If an adult has greater knowledge or experience than an ordinary person in his position would have, he is required to exercise that greater knowledge and experience. Instances of superiority are not important in determining a minimum standard.
Deficiencies of a particular individual are, however, of primary importance. On the whole, adults cannot defend imputations of negligence on the ground that in mental capacity, experience or knowledge they fall below the standard of the reasonable man. In the case of infants, on the contrary, deficiencies in mental capacity, experience or knowledge are to be considered in determining whether or not their conduct is negligent." (at pp. 620-621)
Although Bush involved the contributory negligence of a four-year-old, we shall assume for the purposes of this opinion that the principles therein stated apply to cases such as the one at bar in which the primary negligence of a child is involved. However, it should be noted that Professor Shulman pointed out in the article mentioned above:
"The standard of conduct to which an infant is to be held when his own liability is in question may properly be quite different from that to which he is to be held when he seeks to recover from an admittedly negligent defendant. It is apparent that different considerations may be involved in these several types of cases. There is a strong policy in favor of protecting children from losses attributable to their immaturity. It would be quite plausible, therefore, for a court to be more lenient toward children whose injuries are attributable, not only to their immaturity, but also to conceded tortious conduct on the part of the defendant, than toward children who are the sole responsible causes of injury to others. Yet the cases do not enter into niceties." (at p. 619)
*8 Furthermore, it has been suggested that where, as here, the infant is the defendant and is insured, no allowance should be made for his age. Prosser, Torts (3d ed. 1964), § 32, p. 153; Fleming James, Jr., "Accident Liability Reconsidered: The Impact of Liability Insurance," 57 Yale L.J. 549, 554 (1948). However, as we have said, we shall approach the problem before us without regard to insurance and with the assumption that the principles enunciated in Bush apply to Harvey's liability in the case at bar.
But the application of those principles to given facts must vary as the facts vary. One great difference between the contributory and primary negligence cases is that the former usually involve the child's comprehension of the acts or neglect of people about him, while those in which he is charged with primary negligence involve what he himself has done. It follows that usually a child needs less maturity, training and judgment to foresee the consequences of his own acts than to comprehend and avoid the danger created in whole or in part by the acts or neglect of others. Cf. Rolfe v. Olson, 87 N.J. Super. 242 (App. Div. 1965).
It is not denied that Harvey threw the rod and that it struck Michael. According to the pretrial order, his defense was that "the two boys were playing; that part of a surrey bounced off the ground and struck the infant plaintiff." Defendants' cross-examination indicated that, had Harvey taken the stand, he would have testified that the use of the rod was a permissible part of the game and that he had aimed it at Michael's feet. Generally, a participant in a game assumes the dangers inherent in it, but not dangers improperly introduced into it, or of risks resulting from negligence. See Annotation, 173 A.L.R. 890 (1948). Plaintiffs contended that Harvey had no right to use a metal rod in the game; even if he did, he had no right to throw it; and if he did have the right to throw it at his feet, he did it negligently.
Is there anything in the framework of these issues which justified the dismissal? We think not. In Bush, supra, the court said:
*9 "But if the trial judge feels that reasonable men can disagree on the question of incapacity, even though he himself would decide for or against incapacity * * * he must allow the jury to decide * * *. The jury, if it finds that the particular child at the time of the accident had the capacity to be negligent, must then decide whether the particular child was negligent." (30 N.J., at p. 354)
We think the jury could have found that every normal 5 1/2-year-old child knows that an object thrown in the direction of another may strike him and cause hurt and that he must take care to avoid it. As Prosser says, "there is a sufficient basis of community experience, on the part of those who have been children or dealt with them, to permit the jury to apply [the] special standard." Prosser, Torts, supra, at p. 157. In any event, the jury could have found that this was known to Harvey, a bright boy, by reason of his attitudes, utterances and experiences above set forth, and the lectures, warnings and punishments he had received not only from his mother and grandfather, but from neighbors as well.
The judgment in favor of Harvey is reversed. The judgment in favor of his parents is affirmed.