713 A.2d 442

SAMUEL VEGA, AN INFANT BY HIS GUARDIAN AD LITEM, MIGDALIA MUNIZ, AND MIGDALIA MUNIZ, INDIVIDUALLY, PLAINTIFFS–APPELLANTS, v. ROBERT PIEDILATO, BRUCE PUFF AND WAYNE PUFF, DEFENDANTS–RESPONDENTS, AND CITY OF PERTH AMBOY, HOUSING AUTHORITY, COUNTY OF MIDDLESEX HOUSING AND COMMUNITY DEVELOPMENT, STATE OF NEW JERSEY, COMMUNITY AFFAIRS DEPARTMENT, DIVISION OF HOUSING, JOHN DOE, RICHARD ROE, ABC CORP., AND XYZ CORP. (THE LAST FOUR NAMES FICTITIOUS AS THE TRUE IDENTITIES ARE UNKNOWN), DEFENDANTS.

Argued November 18, 1997—Decided June 23, 1998.

*Eugene A. Cross*, argued the cause for appellants (*Ramp & Renaud*, attorneys; *Ann L. Renaud*, on the brief).

*Thomas D. Monte, Jr.*, argued the cause for respondent Robert Piedilato (*Monte, Marriott & Sachs*, attorneys; *Mr. Monte* and *Frank E. Borowsky, Jr.*, of counsel; *Mr. Borowsky*, on the brief).

*William C. Carey*, argued the cause for respondents Bruce Puff and Wayne Puff (*McElroy, Deutsch & Mulvaney*, attorneys; *Mr. Carey* and *John T. Coyne*, on the brief).

The opinion of the Court was delivered by

OHERN, J.

We granted certification, 149 *N.J.* 139, 693 *A.*2d 109 (1997), to consider whether our decision in *Brett v. Great American Recreation, Inc.,* 144 *N.J.* 479, 677 *A.*2d 705 (1996), modified the infant-trespasser rule as formulated in section 339 of the *Restatement (Second) of Torts* (1965) (*Restatement* ), and whether, under that formulation, the negligence of the trespassing child is double counted, first to determine whether a duty exists on the part of the landowner and again to reduce or eliminate an award for the minor. We conclude that our holding in *Brett* did not modify the *Restatement* and that there is no double counting. We, therefore, affirm the judgment of the Appellate Division dismissing the minor's claim.

I

Because the case arises on defendants' motion for summary judgment, we accept the facts alleged in a light most favorable to the minor claimant. Plaintiff, Samuel Vega,[1] was fourteen years old at the time of this incident. On the evening of October 30, 1991, he and two friends were on the roofs of adjoining three-story apartment buildings located at 685 State Street ("685"), owned by Robert Piedilato, and 687 State Street ("687"), owned by Bruce and Wayne Puff, in Perth Amboy. It was "Mischief Night," and the boys were throwing tomatoes at cars on the street. The children entered 685 through an unlocked door. They walked to the third floor and went out on the roof through an access-way secured by only a plastic bag. Once on the roof of the building, they could move freely from the roof of 685 to the roof of 687. The owner of 685, Piedilato, was fully aware that it was common for children to enter his apartment building and access the roof.

---

[1] References to "plaintiff" encompass actions filed on behalf of the minor child, Samuel Vega, and by Migdalia Muniz, individually and as Guardian ad Litem.

Between the two buildings there is an irregularly shaped air shaft running the full height of the building. At its widest point, the air shaft measures fifteen feet. There is a short parapet on the 687 side of the air shaft but none on the other side. Samuel Vega had not been on the roof of the two apartment buildings prior to that night. It was dark when he went on the roof.

As the youths were throwing tomatoes from the roof of 687, a police car turned onto State Street. Fleeing from the police, the children ran toward the back of the building. As Samuel reached the area of the air shaft, he tripped and fell into it. He suffered devastating injuries and had to be air-lifted from the bottom of the air shaft by helicopter. He suffered paralysis and brain damage. He was unable to recount what happened that night. The Court has since been informed that Samuel passed away on May 18, 1997.

The trial court granted summary judgment in favor of defendants, ruling that "an air shaft between two buildings is a condition which is apparent even to children and the risk of falling in the shaft should be fully realized." The court characterized plaintiff's action as one of "recklessness and bravado [that] does not fall under the terms of [the infant-trespasser clause]."

The Appellate Division held that plaintiff had established that defendants knew or should have known children were trespassing on the roof but that plaintiff had failed to establish that the air shaft posed an unreasonable risk or that Samuel did not appreciate the full extent of the risk of the air shaft. In its reported opinion, the Appellate Division held that "a jury could not rationally conclude that Samuel did not fully 'realize' the risks involved in running 'within the area' of this patently obvious danger." *Vega v. Piedilato,* 294 *N.J.Super.* 486, 498, 683 *A.*2d 845 (1996).

## II

Plaintiff contends that this Court's decision in *Brett* requires that we now modify the infant-trespasser rule. Plaintiff argues that under the negligence analysis of that rule the Court should

consider the foreseeability of the danger to define the scope of the landowner's duty. The Court should consider the infant's perception of the danger only to the extent that it would reduce plaintiff's ultimate recovery. Plaintiff argues that the rule adopted by the Appellate Division uses the minor's perception of risk in defining the landlord's duty in a manner similar to the outmoded and discarded concept of contributory negligence.

Traditional concepts of landowners' tort liability impose on possessors of land "no duty of care other than to refrain from willful and wanton injury toward trespassers." *Diglio v. Jersey Cent. Power & Light Co.*, 39 *N.J.Super.* 140, 144, 120 *A.*2d 650 (App.Div.1956). Over time, "the protective fortifications of [these] early common-law principles" were weakened. *Id.* at 143, 120 *A.*2d 650. Judge Jayne described the change as a "battle" at the "heavy gates which for centuries have protected the traditional immunities of the possessors of land." *Id.* at 145, 120 *A.*2d 650.

At common law, courts define the extent of a landowner's tort liability toward a party injured due to a dangerous condition on the property by first determining the status of the injured party on the land:

Historically, the duty of the owner or occupier to such a person is gauged by the right of that person to be on the land. That status is determined by which of three classifications applies to the entrant, namely, that of a business invitee, licensee, or trespasser.

An owner or possessor of property owes a higher degree of care to the business invitee because that person has been invited on the premises for purposes of the owner that often are commercial or business related. A lesser degree of care is owed to a social guest or licensee, whose purposes for being on the land may be personal as well as for the owner's benefit. The owner owes a minimal degree of care to a trespasser, who has no privilege to be on the land.

[*Hopkins v. Fox & Lazo Realtors*, 132 *N.J.* 426, 433, 625 *A.*2d 1110 (1993) (citations omitted).]

Although the injured party's status as an invitee, licensee, or trespasser defines the extent of a landowner's tort liability, foreseeability is one constant that plays a significant role in fixing a landowner's duty:

As in other tort contexts, . . . the overriding principle governing the determination of a duty is the general tort obligation to avoid foreseeable harm to others. Thus,

in a landowner-liability case decided nearly a half-century ago, we said that "[t]he basis of liability is the foreseeability of harm, and the measure of duty is care in proportion to the foreseeable risk." Just last term we noted the settled principle that "the common-law classifications of persons on land should be applied flexibly in assessing the landowner's general tort obligation to avoid foreseeable harm to others."

[*Kuzmicz v. Ivy Hill Park Apartments, Inc.*, 147 *N.J.* 510, 534, 688 *A.2d* 1018 (1997) (quoting *Brett, supra,* 144 *N.J.* at 508, 677 *A.2d* 705) (Stein, J., dissenting) (citations omitted).]

As our society developed, the court-created formulations that were so crucial to the analysis of landowners' tort liability became increasingly difficult to apply to new and complex relationships between landowners and those on their property. These new relationships required modification of the traditional categories. A generation ago, Justice Stewart wrote, in *Kermarec v. Compagnie Generale Transatlantique*, 358 *U.S.* 625, 630–31, 79 *S.Ct.* 406, 410, 3 *L. Ed.*2d 550, 554–55 (1959), that

[t]he distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards "imposing on owners and occupiers a single duty of reasonable care in all of the circumstances."

[Footnotes omitted.]

The glacial pace of the law has not yet traversed the "morass" of common-law classifications. But as our industrial society has developed, concerns about children and the great probability of harm to children from dangerous conditions of land

led many courts and the *Restatement* to reject, in the case of children, the premise on which the occupier's special immunities rested, *i.e.,* a judgment that full utilization of land required immunity even at the expense of the lives and limbs of people, and to substitute the more flexible test of negligence which would balance these competing interests on a case to case basis.

[Fleming James, Jr., *Tort Liability of Occupiers of Land: Duties Owed to Trespassers*, 63 *Yale L.Rev.* 144, 164 (1953) (footnotes omitted) (hereafter, James).]

In *Strang v. South Jersey Broadcasting Co.*, 9 *N.J.* 38, 45, 86 *A.*2d 777 (1952), New Jersey joined the growing number of jurisdictions that accepted section 339 of the *Restatement of Torts*, which imposes liability on a possessor of land for bodily injury sustained by an infant trespasser.

The current formulation of the infant-trespasser doctrine appears in *Restatement* section 339:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if:

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

■ A claimant must establish each element of section 339 to support a *prima-facie* case. *Blackburn v. Broad St. Baptist Church*, 305 *N.J.Super.* 541, 547, 702 *A.*2d 1331 (App.Div.1997); *Coughlin v. U.S. Tool Co.*, 52 *N.J.Super.* 341, 342, 145 *A.*2d 482 (App.Div.1958), *certif. denied*, 28 *N.J.* 527, 147 *A.*2d 305 (1959). The application of section 339 is not mechanical. Courts must consider the unique factual setting of each case in deciding whether plaintiff has made a sufficient showing to raise a jury question for each of the five elements. *Blackburn, supra,* 305 *N.J.Super.* at 547, 702 *A.*2d 1331.

■ In some jurisdictions the court alone determines, under subsection (c), whether the minor's appreciation of the risk eliminates any duty on the part of the landowner. 3 J.D. Lee & Barry

A. Lindhal, *Modern Tort Law* § 30.06 (rev. ed.1988). In New Jersey, however, the subsection (c) consideration is rarely a question of law:

> Realization of the risk involved means something more than mere awareness that "you could get hurt." It connotes appreciation of the danger involved rather than mere knowledge of the existence of the condition itself. . . . [I]f it is fairly debatable whether the child, considering his age and degree of immaturity, really comprehended the extent of the danger to which he was exposing himself, a jury question as to realization is presented.
>
> [*Haase v. North Hudson Scrap Iron Corp.*, 62 *N.J.* 263, 266, 300 *A.*2d 561 (1973) (citing *Prosser & Keeton on Torts* § 59 (4th ed.1971)).]

We have never adopted a *per se* rule that a child above a certain age should be deemed to be aware of the risk. Judge Conford explained the analysis:

> [T]here is no place for the assumption in law that any particular child, in the absence of conclusive evidence thereof, has shed his immaturity at any particular age. In this domain the law may wisely find its guide in the general sense of mankind. Nor should there intrude the notion that at any given age the child "should know better." We are here necessarily dealing in pragmatics, not theories of improvement of child behavior. Close curtailment of liability by law will not dull the instinct of the child for carefree play. But the fair application of the rule of liability on a realistic basis will encourage the adoption of safety measures by industrial and other land occupiers and subserve the intent of the rule that the risk of foreseeable injuries to children be borne by those best able on the whole to prevent them.
>
> [*Hoff, supra*, 38 *N.J.Super.* at 234, 118 *A.*2d 714.]

*Accord McColley v. Edison Corp. Ctr.*, 303 *N.J.Super.* 420, 427–28, 697 *A.*2d 149 (App.Div.1997) ("[T]here is no precise age at which [section] 339 liability no longer applies to a minor . . . [for] age is but one factor, along with the nature and obviousness of the risk and the likelihood that the risk would be appreciated by a fourteen-year-old under similar circumstances.")

In this case, because the minor child suffered so devastating and paralyzing an injury, it is impossible to assess whether he "really comprehended the extent of the danger to which he was exposing himself." *Haase, supra*, 62 *N.J.* at 266, 300 *A.*2d 561. The trial court was frank to acknowledge this: "Due to the inability to testify, we cannot objectively say that plaintiff appreciated the risk; however, we can say the roof did not present an unreason-

able dangerous condition to trespassing children. This does not meet ... [subsection] (b) of section 339."

As noted, in finding for defendants, the Appellate Division relied on plaintiff's inability to satisfy subsections (b) and (c). More specifically, the Appellate Division held that plaintiff failed to show that the air shaft posed an "unreasonable risk of death or serious bodily harm to such children," or that Samuel, because of his age, failed to appreciate the risk involved with the condition. *Vega, supra,* 294 *N.J.Super.* at 497, 683 *A.*2d 845. Relying on comment (j) to section 339, the Appellate Division reasoned that a condition does not involve an unreasonable risk to a trespassing child if the child, considering the child's age and the obviousness of the danger, can be expected to appreciate it.

> The duty of the possessor, therefore, is only to exercise reasonable care to keep the part of the land upon which he should recognize the likelihood of children's trespassing free from those conditions which, though observable by adults, are likely not to be observed by children, or which contain the risks ... which are beyond the imperfect realization of children. It does not extend to those conditions the existence of which is obvious even to children and the risk of which should be fully realized by them.
>
> [*Restatement, supra,* § 339 comment i.]

Plaintiff acknowledges that under *Coughlin* it is likely that under normal daylight conditions the irregularly shaped air shaft would not in itself create an unreasonably dangerous condition. In *Coughlin,* a fourteen-year-old boy had fallen while jumping from roof to roof. He admitted that he was aware of the risk and danger involved in jumping from roof to roof in the dark. *Coughlin, supra,* 52 *N.J.Super.* at 346, 145 *A.*2d 482. Plaintiff attempts to distinguish *Coughlin,* arguing that an open air shaft becomes unreasonably dangerous when the landlord knows or has reason to know there was unrestricted access to the rooftops and that children were using the rooftops at night when darkness prevented them from seeing the full extent of the irregularly shaped air shaft and from seeing how to get around it safely. Thus plaintiff argues that a jury question was presented under subsection (b) of section 339.

Before considering application of the *Restatement* factors, we digress to consider the issue of comparative negligence.

### III

■ The corollary to the proposition that there is no "precise age" at which a child "should know better" is the proposition that there is a proper place in the law of landowners' liability to impose upon minors the responsibility to exercise due care for their own safety. What a minor "should have done" is assessed under the doctrine of comparative negligence. There is no impermissible double counting in that assessment because the two concepts are distinct. This is because

> the test in determining negligence ... is an objective and not a subjective one. Therefore, whether the actor did or did not appreciate the danger of the situation may be of no materiality.
>
> The law of attractive nuisance is but a phase of the law of negligence. It necessarily follows that if the plaintiff child is guilty of contributory negligence [the] comparative negligence statute applies.
>
> [*Nechodomu v. Lindstrom,* 273 *Wis.* 313, 78 *N.W.*2d 417, 418 (Wis.1956).]

At first this proposition appears counter-intuitive but on closer analysis it is correct:

> There is, therefore, no disharmony in permitting the jury to find first that defendant was negligent as determined by [the section 339 test], and yet find that the particular child injured had, because of his own fault, forfeited his right to recover.
>
> . . . .
>
> There is ample authority for the position we have taken.... At [2 *Harper & James, Torts* § 27.5.] page 1455, note 57 [it is said]:
>
>> The question of the child's contributory negligence is a separate problem which must be carefully distinguished from that of the land occupier's duty.... Unfortunately the issues are often confused. Where contributory negligence bars recovery anyway, the confusion does not affect the result. But in cases in which the plaintiff may not be contributorily negligent, it would be important to keep the issues distinct.
>
> [*Pocholec v. Giustina,* 224 *Or.* 245, 355 *P.*2d 1104, 1108–09 (Or.1960) (quoting 2 *Harper & James, Torts,* § 27.5, at 1455 n.57 (1956)).]

*See also Colls v. City of Chicago,* 212 *Ill.App.*3d 904, 156 *Ill.Dec.* 971, 571 *N.E.*2d 951, 978 (1991) (holding that to charge compara-

tive negligence in trespassing-child case is proper). A court instructing a jury should explain that assessing whether a plaintiff appreciated the risk requires an evaluation of the claimant's subjective state of mind; assessing whether a claimant failed to use that degree of care which persons of the same age should exercise for their own safety requires an objective evaluation of the actor's conduct.[2]

As noted, the courts below concluded as a matter of law that plaintiff had failed to make out a *prima-facie* case under subsections (b) and (c) of section 339. It is a close question. To begin with, that Samuel can be considered a trespasser is not clear. One of the youths who accompanied him that night was a tenant in 687. Would that tenant have been a trespasser? Would his guest have been a trespasser? Was the roof an authorized common area of the building? The traditional common-law classifications based on status are rather difficult to apply in the setting of complex social relationships involving tenants and a multiple-family housing unit. The classifications are not always ideally suited to lead us to the point where responsibility may fairly be sorted out. This case is not the case in which to revisit those classifications as our concurring member would have us do.

## IV

In another case, we might differ with the Appellate Division's treatment of subsection (c), the child's appreciation of the risk (it appeared to have been an objective analysis rather than a subjective analysis) and its treatment of subsection (b) (whether the properties posed a foreseeable risk of harm to the minors). Had

---

[2] Undoubtedly, some of the confusion has stemmed from the need to distinguish between the age, at common law, when children are rebuttably presumed to be incapable of contributory negligence, *Bush v. New Jersey & New York Transit Co.*, 30 N.J. 345, 358, 153 A.2d 28 (1959), and the age when a trespassing child might no longer be considered of "tender years" for purposes of the "special rule" of *Restatement* section 339. *Prosser & Keeton on Torts* § 59 (5th ed.1984).

one of these youths tripped and fallen into the air shaft during the conduct of a school assignment to observe an eclipse of the moon, a jury question might be presented concerning failure of the landlords to take precautions to guard against such an eventuality.

We believe, however, that this judgment should be affirmed. Although the complaint alleges that Samuel was walking near the air shaft, the undisputed evidence from the one witness who clearly observed the fall is that the accident occurred when Samuel tripped while attempting to make a running leap over the air shaft from one building to the other.[3] We are satisfied that

---

[3] At their depositions, one of the two youths on the roof said that he did not see Samuel fall. The other testified as follows:

Q After you shouted to the others that the police were coming you said you started to run, is that right?
A Yeah.
Q Where did you run?
A We were trying to jump that big hole to the other building.
Q So you were going to try and jump over the big hole?
A Yeah.
Q Why didn't you go to the front or the back where the roofs were touching?
A We went to the back, the police was coming, so we were like, "Yeah, he's coming." So the big hole, we jumped that big hole. We were scared.
. . . .
Q Now, did you see Sammy fall?
A Yeah.
Q Where were you standing?
A I was in the back, we was running. Sammy was first, I was second.
. . . .
Q . . . Which way did he start running after you told him the cops were coming?
A To the big hole.
Q He started running toward the big hole?
A Yeah.
Q So both of you were running toward the big hole. . . .
. . . .
Q So as you were running now toward the big hole Sam Vega was in front of you, is that right?
A Yes.
Q Could you see Sam?
A Yeah.

even if a court were convinced that all of the elements of section 339 had been established under the principles set forth in *Brill v. Guardian Life Insurance Co. of America*, 142 *N.J.* 520, 666 *A*.2d 146 (1995), no reasonable jury could find that the plaintiff's injuries were proximately caused by the conditions of the property. Plaintiff advanced numerous allegations of negligence: that the downstairs door of 685 should have been kept securely locked, that access to the roof from 685 and 687 should have been controlled by a fire-safety door with an alarm that would sound when the door was opened from the inside, and that the air shaft should have been fenced. We do not believe that a fair-minded jury could find that the lack of security measures was the cause of the fall. The cause of the accident and injuries was the plaintiff's unsuccessful effort to leap this divide. Even when parties have a special relationship to others requiring them to act to prevent foreseeable harm, the issue of proximate cause is always present. *See Cowan v. Doering*, 111 *N.J.* 451, 545 *A*.2d 159 (1988) (holding that causation would be issue in case of incompetent patient leaping from hospital window).

We agree with the Appellate Division that nothing in *Brett* substantially modified the infant-trespasser rule. As the Appellate Division correctly noted, *Brett* "simply departed from the general rule applicable to adult trespassers because such a rule in the special circumstances of that case would have been unfair and unjust." *Vega, supra*, 294 *N.J.Super.* at 501, 683 *A*.2d 845. In *Brett, supra*, the Court held that because the Legislature intended

---

Q How far away from you was he?

A He was here, I was right here in the back. (Indicating.)

Q Close enough to touch him?

A Yeah.

Q So you were right behind him. When he got to the big hole what did he do?

A He hit a bump, I don't know, a little bump, and he just fell down.

Q Well, I thought you said he was going to try and jump over the big hole.

A He was going to try, but he felt like a bump, so he fell.

that the Ski Statute, *N.J.S.A.* 5:13–1 to –11, completely displace the traditional common-law classifications of landowner's liability in the case of recreational skiers and tobogganers and because the parties had agreed to try the case under the Ski Statute, the general classifications under the common law were inapplicable. 144 *N.J.* at 502, 677 *A.*2d 705. In dictum, the Court observed that whatever their classification might have been at common law, defendant would have owed the plaintiff at least a duty "to remove obvious, man-made hazards as soon as practicable." *Id.* at 509, 677 *A.*2d 705.

 In the case of minors, the classifications are not arcane. We have distilled the essence of the doctrine thus:

> Although a possessor of land generally is not obliged to keep his land safe for trespassers, an exception exists for those trespassers who are infants. Because children may lack sufficient discretion for their own safety, a possessor who maintains a dangerous condition may be liable to infants when they trespass on his land. For the infant trespasser rule to apply, a plaintiff must establish that: (1) the infant's trespass was foreseeable; (2) an artificial condition existed on defendant's property; and (3) the condition posed an unreasonable risk of death or serious bodily injury.
>
> [*DeRobertis v. Randazzo*, 94 *N.J.* 144, 157, 462 *A.*2d 1260 (1983) (citations omitted).]

When applied flexibly, the common-law classifications provide a balanced method of assessing landowners' liability for negligently inflicted harm to trespassing children.

The judgment of the Appellate Division is affirmed.

HANDLER, J., concurring.

This is a sad and hard case. A young boy, failing to heed a dangerous condition, lost his life. Yet, callous though it seems, our law precludes recovery where the victim demonstrates this degree of recklessness. The Court recognizes and accepts that result. The principle of law on which the Court relies, however, is ill-suited to explain its reasoning and conclusion. More importantly, the Court's adherence to that law will make it more likely that in other, similar cases the result will be incorrect and unjust as well as sad and hard.

The majority retains the common-law status categories for premises liability. The common law determines responsibility and liability for injuries occurring on premises by distinguishing among invitees, licensees and trespassers and assigning injured parties to one of those categories. This tripartite classification system is an anachronism of an agrarian society, and, when applied today, the classification scheme creates more confusion than clarity.

I believe the obsolete common-law classification standard should be replaced with a general duty of reasonable care under the circumstances. The plaintiff's conduct should not shape the defendant's duty; instead, the doctrine of comparative negligence should be the locus at which factfinders evaluate the plaintiff's behavior. Thus, I conclude that defendants owed Vega a duty of reasonable care under the circumstances and that they breached that duty of care. Nevertheless, I would grant defendants' motion for summary judgment. I would do so, not on the basis of proximate cause, as determined by the Court, but because Vega's comparative negligence exceeded that of defendants. Accordingly, although I concur with the majority's judgment, I differ from its reasoning and therefore write separately.

I

By continuing to apply Section 339 of the *Restatement (Second) of Torts,* the Court retains the common-law scheme for premises liability. The common-law classification system that this Court chooses to retain is a relic from mid-nineteenth-century England. *See, e.g.,* John Ketchum, Note, *Missouri Declines an Invitation to Join the Twentieth Century: Preservation of the Licensee–Invitee Distinction in* Carter v. Kinney, 64 *UMKC L.Rev.* 393, 395 (1995). It was first recognized in the United States in 1865. Edward A. Strenkowski, Case Note, 33 *Ark. L.Rev.* 194, 195 (1979); *see Sweeny v. Old Colony & Newport R.R.,* 92 *Mass.* 368 (1865). "The distinctions ... were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a

heritage of feudalism." *Kermarec v. Compagnie Generale Transatlantique*, 358 *U.S.* 625, 630, 79 *S.Ct.* 406, 410, 3 *L. Ed.*2d 550, 554 (1959).

Under this common-law tradition, "the duty owed by an occupier of land to third persons coming thereon is determined according to the status of such third person, *i.e.*, invitee, licensee or trespasser." *Snyder v. I. Jay Realty Co.*, 30 *N.J.* 303, 311, 153 *A.*2d 1 (1959).

> The duty owed to a trespasser is relatively slight. A landowner, under most circumstances, has a duty to warn trespassers only of artificial conditions on the property that pose a risk of death or serious bodily harm to a trespasser. To the social guest or licensee, the landowner owes a greater degree of care. Although the owner does not have a duty actually to discover latent defects when dealing with licensees, the owner must warn a social guest of any dangerous conditions of which the owner had actual knowledge and of which the guest is unaware.
>
> Only to the invitee or business guest does a landowner owe a duty of reasonable care to guard against any dangerous conditions on his or her property that the owner either knows about or should have discovered. That standard of care encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions.
>
> [*Hopkins v. Fox & Lazo Realtors*, 132 *N.J.* 426, 434, 625 *A.*2d 1110 (1993) (citations omitted).]

The tripartite classification system is fraught with analytical and practical problems. It is often difficult, if not impossible, to discern an entrant's status. "In a case ... in which the legal relationships are not precisely defined, the attempt to pigeonhole the parties within the traditional categories of the common law is both strained and awkward." *Id.* at 438, 625 *A.*2d 1110 (referring to the relationship between a real estate agent and a potential customer on premises for an open house); *see also Mounsey v. Ellard*, 363 *Mass.* 693, 297 *N.E.*2d 43, 57 (1973) (Kaplan, J., concurring) ("[I]t is sometimes just as hard to distinguish trespassers from licensees or invitees, as to distinguish licensees from invitees."); Kristin K. Woodward, Note, *Owners and Occupiers of Land Now Owe Those Lawfully on Their Premises a Duty of Reasonable Care Under Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996), 76 *Neb. L.Rev.* 184, 198 (1997) (recognizing that distinguishing trespassers from nontrespassers is a heavy

burden); Strenkowski, *supra,* 33 *Ark. L.Rev.* at 205 (noting the inherent difficulty in distinguishing trespassers from invitees and licensees). Applications of the common-law categories are beset by recurrent and inescapable uncertainty. They create a "semantic morass." *Kermarec, supra,* 358 *U.S.* at 631, 79 *S.Ct.* at 410, 3 *L. Ed.*2d at 555. As the majority explains: "As our society developed, the court-created formulations that were so crucial to the analysis of landowners' tort liability became increasingly difficult to apply to new and complex relationships between landowners and those on their property." *Ante* at 502, 713 *A.*2d at 445. In this case, the majority acknowledges that assigning Vega to a common-law category is baffling:

> To begin with, that Samuel can be considered a trespasser is not clear. One of the youths who accompanied him that night was a tenant in 687. Would that tenant have been a trespasser? Would his guest have been a trespasser? Was the roof an authorized common area of the building? The traditional common-law classifications based on status are rather difficult to apply in the setting of complex social relationships involving tenants and a multiple-family housing unit. The classifications are not always ideally suited to lead us to the point where responsibility may fairly be sorted out.
>
> [*Id.* at 507, 713 *A.*2d at 448.]

This is not the first premises liability case in which this Court has encountered difficulty in classifying a plaintiff as an invitee, licensee or trespasser. In *Brett v. Great Am. Recreation, Inc.,* 144 *N.J.* 479, 677 *A.*2d 705 (1996), this Court described as a "struggle" the task of designating an entrant status to tobogganners, who were injured at 11 p.m. on a hill on which they had intended to ski the following day. *Id.* at 509, 677 *A.*2d 705. In *Hopkins, supra,* 132 *N.J.* at 438, 625 *A.*2d 1110, the status of a real-estate customer attending an open house similarly perplexed this Court. Because the analysis dictated by the common-law classifications skewed rather than clarified the relationships that were at the heart of legal responsibility and liability, we chose in those cases to disregard those classifications. *Brett, supra,* 144 *N.J.* at 509, 677 *A.*2d 705; *Hopkins, supra,* 132 *N.J.* at 438, 625 *A.*2d 1110. Forcing an entrant into an anachronistic common-law category in this modern world is often an arduous and artificial

endeavor. As in this case, it frequently depicts a relationship that does not square with reality.

The common-law classification system also does not conform to our contemporary notions of justice. *Smith v. Arbaugh's Restaurant,* 469 *F.*2d 97, 101 (D.C.Cir.1972) ("We believe that the common law classifications are now ... alien to modern tort law, primarily because they establish immunities from liability which no longer comport with accepted values and common experience."), *cert. denied,* 412 *U.S.* 939, 93 *S.Ct.* 2774, 37 *L. Ed.*2d 399 (1973). The common-law classifications may well have been perfectly tailored to the agrarian and sparsely populated society that preceded the Industrial Revolution.

> The common law doctrine with its rigid classifications prescribing premises liability is rooted in early nineteenth century notions of private property interests. Adhering to social mores that placed a paramount value on pastoral and agrarian ideals, courts strove to maximize the protection of rights of landowners to use and enjoy their land.
>
> [*Hopkins, supra,* 132 *N.J.* at 436, 625 *A.*2d 1110.]

*See also Smith, supra,* 469 *F.*2d at 101 ("Perhaps the protection afforded to landowners by these rules was once perceived as necessary in view of the sparseness of land settlements, and the inability of owners to inspect or maintain distant holdings. The prestige and dominance of the landowning class in the nineteenth century contributed to the common law's emphasis on the economic and social importance of free use and exploitation of land over and above the personal safety of those who qualified as trespassers or licensees."). Nevertheless, our society and values have transformed since the creation of the common-law classifications.

> The United States is no longer the agrarian society that accepted the scheme of entrant classes from England as adopted common law. The national character is now dominated by a rapid-paced urban and suburban culture. The exigencies of this urban civilization have produced a more 'gregarious society' and have increased the probability that people will enter the property of others.
>
> [Recent Developments, *Torts—Abrogation of Common–Law Entrant Classes of Trespasser, Licensee, and Invitee,* 25 *Vand. L.Rev.* 623, 640 (1972) (footnote omitted).]

"Today, the preeminence of land over life is no longer accepted. Human safety may be more important than a landowner's unre-

stricted freedom." *Smith, supra,* 469 *F*.2d at 101; *see also* Michael Sears, Comment, *Abrogation of the Traditional Common Law of Premises Liability,* 44 *U. Kan. L.Rev.* 175, 185–86 (1995) (recognizing the emergence of "the more modern and humanitarian theory of compensation"); Kerrie Restieri–Heslin, Note, 24 *Seton Hall L.Rev.* 2227, 2255–56 (1994) ("The social values and economy of the United States are no longer based on an agrarian society or feudal norms. Our modern, urbanized, and complex society has so evolved that a higher value is placed on human safety and protection than on private property rights.").

A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values.

[*Rowland v. Christian,* 69 *Cal*.2d 108, 70 *Cal.Rptr.* 97, 443 *P*.2d 561, 568 (Cal.1968).]

*See also* Woodward, *supra,* 76 *Neb. L.Rev.* at 197 ("A minor invasion of a property interest should not cause one to be deemed unworthy of humane treatment in today's society."); Mark J. Welter, Comment, *Premises Liability: A Proposal to Abrogate the Status Distinctions of "Trespasser," "Licensee" And "Invitee" as Determinative of a Land Occupier's Duty of Care Owed to an Entrant,* 33 *S.D. L.Rev.* 66, 84 (1987/1988) ("Human life is more important than property and one should be held responsible for injuries to others resulting from his own negligence."); Strenkowski, *supra,* 33 *Ark. L.Rev.* at 202 ("Humanitarian and social mores of today, responding to perhaps a higher concern for human life, favor restrictions upon the landowner."). Because the values on which the common-law classifications were based have changed, the tripartite classification system has become obsolete. *See Hopkins, supra,* 132 *N.J.* at 436, 625 *A*.2d 1110 ("[W]ith the development of a more urbanized, heterogeneous, destabilized, and complex society, the status of persons in relation to the use of property could no longer be adequately accommodated by the strict traditional classifications of the common law."); *Turpel v.*

*Sayles,* 101 *Nev.* 35, 692 *P.*2d 1290, 1291 (1985) ("[A]s other courts have concluded, we are not satisfied that the traditional principles of property law are appropriately applied to analysis of a tort claim in a twentieth century urban residential setting."); Tab H. Keener, *Can the Submission of a Premises Liability Case Be Simplified?,* 28 *Tex. Tech L.Rev.* 1161, 1174 (1997) (recognizing the status categories fail to reflect issues presented in today's premises liability suits); Ketchum, *supra,* 64 *UMKC L.Rev.* at 411 ("Although the common law distinctions may have proved fruitful in protecting landowner interests—supporting the expansion of a simplistic, nineteenth century agrarian economy—they have proved largely incapable of justly delegating liability in the vastly more complicated, industrialized society of the twentieth century."); Kathryn E. Eriksen, *Premises Liability in Texas—Time for a "Reasonable" Change,* 17 *St. Mary's L.J.* 417, 439 (1986) (noting the obsolescence of the classification scheme).

We have always recognized at common law that when the reasons that gave rise to a rule of law no longer endure, the law itself, lacking foundation, must be replaced. *State v. Culver,* 23 *N.J.* 495, 506, 129 *A.*2d 715 (1957) (stating the common law must adopt to modern conditions). When the policies and values that undergird a principle of law have changed, the law also should change. *Funk v. United States,* 290 *U.S.* 371, 383, 54 *S.Ct.* 212, 216, 78 *L. Ed.* 369, 376 (1933) ("It has been said so often as to have become axiomatic that the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions."); *Hopkins, supra,* 132 *N.J.* at 435, 625 *A.*2d 1110 ("We have long acknowledged that the legal rules expressive of the common law embody underlying principles of public policy and perceptions of social values. Because public policy and social values evolve over time, so does the common law."); *Renz v. Penn Central Corp.,* 87 *N.J.* 437, 456, 435 *A.*2d 540 (1981) (noting the evolution in negligence jurisprudence).

The law governing premises liability has not escaped the evolving nature of the common law itself. "Whatever the social and

policy considerations that led to the judicial creation of the invitee, licensee and trespasser immunities they no longer retain their viability under modern conditions and it is fitting and proper that they be laid to judicial rest." *Ouellette v. Blanchard,* 116 *N.H.* 552, 364 *A.*2d 631, 634 (1976). "By failing to harmonize the law with present societal conditions, the majority abdicate the court's responsibility for the upkeep of the common law." *Elden v. Sheldon,* 46 *Cal.*3d 267, 250 *Cal.Rptr.* 254, 758 *P.*2d 582, 594 (1988) (Broussard, J., dissenting). The policies and values of the by-gone era of the mid-nineteenth century giving rise to the classification of entrants on land, and the reasons justifying that classification, no longer persist. In view of our society's modernization, abrogation of the tripartite classification system is warranted.

Acknowledging the antiquity of the premises liability classification system, the majority nevertheless retains it. The Court implicitly attempts to discount the arbitrariness that surrounds the common-law classification scheme by pointing to the infant trespasser doctrine as an exception that purportedly gives the scheme flexibility. *Ante* at 502–04, 713 *A.*2d at 445–46. The infant trespasser doctrine, which is also known as the attractive nuisance doctrine, is one of many exceptions to the rigid common-law rule. *See* J.D. Lee & Barry A. Lindahl, 3 *Modern Tort Law: Liability and Litigation* § 30.01, at 57 (rev. ed.1990). Though exceptions to the common-law classifications mitigate the common-law rule's harsh impact, those exceptions themselves create uncertainty and confusion in the law.

> In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured.
>
> [*Kermarec, supra,* 358 *U.S.* at 630–31, 79 *S.Ct.* at 410, 3 *L. Ed.*2d at 554–55 (footnotes omitted).]

*See also Smith, supra,* 469 *F.*2d at 103 (finding the common-law classification system produces confusion); *Webb v. City & Bor-*

*ough of Sitka,* 561 *P.*2d 731, 732 (Alaska 1977) (same); *Rowland, supra,* 70 *Cal.Rptr.* 97, 443 *P.*2d at 566 (same); *Mile High Fence Co. v. Radovich,* 175 *Colo.* 537, 489 *P.*2d 308, 311 (1971) (same); *Jones v. Hansen,* 254 *Kan.* 499, 867 *P.*2d 303, 309 (1994) (same); *Peterson v. Balach,* 294 *Minn.* 161, 199 *N.W.*2d 639, 644 (1972) (same); *Ouellette, supra,* 364 *A.*2d at 634 (same).

Thus, the plethora of exceptions to the common-law classifications endorsed by the majority bring discord into the law. Because the tripartite classification system departs from the general duty of reasonable care under the circumstances, the exceptions to common-law classifications create jurisprudential cacophony. Hence, modifications to the common-law classifications at best constitute exceptions to the exceptions to the basic duty of reasonable care and serve to convolute the law. *See* Ketchum, *supra,* 64 *UMKC L. Rev.* at 412.

Abandoning the tripartite common-law classification system would restore simplicity to our negligence and premises liability jurisprudence. *See Smith, supra,* 469 *F.*2d at 103. The majority's decision to retain the common-law classifications needlessly perpetuates gratuitous complexity in our law. By retaining the premises liability classification system and its exceptions, the majority abdicates its obligation to harmonize the common law. *See Smith v. Bridgeport Futures Initiative, Inc.,* 1996 *WL* 493229, *2 (Conn.Super.1996). ("Courts have an obligation to harmonize their case law so as to bring about consistent common law development."); Ronald Dworkin, *Hard Cases,* 88 *Harv. L.Rev.* 1057 (1975) (illuminating the importance of harmonizing the law, including the common law).

Because the entrant classification system is difficult to apply, deviates from current values, and, with its exceptions and modifications, is complex, the principle of *stare decisis* does not mandate its retention.

"The doctrine of *stare decisis* neither renders the courts impotent to correct their past errors nor requires them to adhere blindly to rules that have lost their reason for being. The common law would be sapped of its life blood if *stare decisis* were

to become a god instead of a guide. The doctrine when properly applied operates only to control change, not to prevent it."

[*White v. Township of N. Bergen*, 77 *N.J.* 538, 550, 391 *A.*2d 911 (1978) (quoting *Fox v. Snow*, 6 *N.J.* 12, 23, 76 *A.*2d 877 (1950) (Vanderbilt, C.J., dissenting)).]

*See also* Oliver Wendell Holmes, *The Path of the Law*, 10 *Harv. L.Rev.* 457, 469 (1897) ("It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.").

The primary function of the law is justice and when a principle of the law no longer serves justice it should be discarded; here the law was embodied not in any controlling statute but in a judicial principle of the law of torts; ... it runs counter to widespread principles which fairly impose liability on those who wrongfully and negligently injure others; it operates harshly and disregards modern concepts of justice and fair dealing; it has been roundly and soundly condemned here and elsewhere and the time has come for its elimination by the very branch of government which brought it into our system.

[*Collopy v. Newark Eye & Ear Infirmary*, 27 *N.J.* 29, 47–48, 141 *A.*2d 276 (1958).]

*See also Smith, supra*, 469 *F.*2d at 105 (holding *stare decisis* does not preclude the court from abolishing the classification scheme); *Mariorenzi v. Joseph DiPonte, Inc.*, 114 *R.I.* 294, 333 *A.*2d 127, 133 (1975) ("The judiciary gave birth to the invitee, licensee, trespasser trio and the judiciary can lay this triptych to rest. Accordingly, we now give a final but fitting internment to the common-law categories of invitee, licensee, and trespasser as well as their extensions, exceptions, and extrapolations."), *overruled by Tantimonico v. Allendale Mut. Ins. Co.*, 637 *A.*2d 1056 (R.I.1994). Because the common-law classifications are no longer justified and are unworkable, *see Hudson v. United States*, —— *U.S.* ——, ——, 118 *S.Ct.* 488, 494, 139 *L. Ed.*2d 450, 460 (1997) (overruling an unworkable precedent); *cf. State v. Norman*, 151 *N.J.* 5, 29, 697 *A.*2d 511 (1997) (refusing to create an unworkable rule), the principle of *stare decisis* does not vindicate this Court's decision to retain the tripartite classification system. In order to eliminate a legal regime that is difficult to apply, fails to comport with modern morality, and has developed into a "semantical quagmire," *Mar-*

*iorenzi, supra,* 333 *A.*2d at 133, the common-law classifications should be abolished in this case.

## II

Rather than base the landowner's duty on the entrant's common-law classification, I would impose a duty of reasonable care under the circumstances regardless of the entrant's status. This approach has been followed by other jurisdictions that have abrogated the tripartite classification system. *See Webb, supra,* 561 *P.*2d at 733; *Rowland, supra,* 70 *Cal.Rptr.* 97, 443 *P.*2d at 568; *Pickard v. City & County of Honolulu,* 51 *Haw.* 134, 452 *P.*2d 445, 446 (1969); *Cates v. Beauregard Elec. Coop., Inc.,* 328 *So.*2d 367, 371(La.), *cert. denied,* 429 *U.S.* 833, 97 *S.Ct.* 97, 50 *L. Ed.*2d 98 (1976); *Limberhand v. Big Ditch Co.,* 218 *Mont.* 132, 706 *P.*2d 491, 496 (1985); *Moody v. Manny's Auto Repair,* 110 *Nev.* 320, 871 *P.*2d 935, 943 (1994); *Ouellette, supra,* 364 *A.*2d at 634; *Basso v. Miller,* 40 *N.Y.*2d 233, 386 *N.Y.S.*2d 564, 352 *N.E.*2d 868, 872 (1976). When declining to apply the common-law classifications, this Court has imposed this duty of reasonable care. *See Hopkins, supra,* 132 *N.J.* at 438, 625 *A.*2d 1110. In addition, the duty of reasonable care is embedded in our negligence jurisprudence. *See Clohesy v. Food Circus Supermarkets, Inc.,* 149 *N.J.* 496, 515, 694 *A.*2d 1017 (1997) (imposing a duty of reasonable care); *Carvalho v. Toll Bros. & Developers,* 143 *N.J.* 565, 577, 675 *A.*2d 209 (1996) (same); *Hopkins, supra,* 132 *N.J.* at 438, 625 *A.*2d 1110 (same); *Butler v. Acme Markets, Inc.,* 89 *N.J.* 270, 280, 445 *A.*2d 1141 (1982) (same).

Landowners have "a general duty to exercise reasonable care in preventing foreseeable harm." *Hopkins, supra,* 132 *N.J.* at 438, 625 *A.*2d 1110. Mere foreseeability, however, does not guarantee the imposition of a duty on a landowner. *E.g., Clohesy, supra,* 149 *N.J.* at 502, 694 *A.*2d 1017. "The determination of the existence of a 'duty to exercise reasonable care to avoid the risk of harm to another ... is one of fairness and policy that implicates many factors.'" *Ibid.* (quoting *Carvalho, supra,* 143 *N.J.* at 572, 675

A.2d 209); *accord Kuzmicz v. Ivy Hill Apartments, Inc.*, 147 *N.J.* 510, 515, 688 *A.*2d 1018 (1997); *Snyder v. American Ass'n of Blood Banks*, 144 *N.J.* 269, 292, 676 *A.*2d 1036 (1996); *Dunphy v. Gregor*, 136 *N.J.* 99, 108, 642 *A.*2d 372 (1994); *Carter Lincoln–Mercury, Inc. v. EMAR Group, Inc.*, 135 *N.J.* 182, 194–95, 638 *A.*2d 1288 (1994); *Hopkins, supra*, 132 *N.J.* at 438–39, 625 *A.*2d 1110; *Weinberg v. Dinger*, 106 *N.J.* 469, 485, 524 *A.*2d 366 (1987); *Kelly v. Gwinnell*, 96 *N.J.* 538, 544, 476 *A.*2d 1219 (1984); *Goldberg v. Housing Auth. of Newark*, 38 *N.J.* 578, 583, 186 *A.*2d 291 (1962). These factors include "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Hopkins, supra*, 132 *N.J.* at 439, 625 *A.*2d 1110.

Undoubtedly, a landowner owes a duty of reasonable care to protect against risks caused by artificial conditions or dangerous instrumentalities on the land. *Brett, supra*, 144 *N.J.* at 509, 677 *A.*2d 705; *Renz, supra*, 87 *N.J.* at 462, 435 *A.*2d 540. Because the air shaft is a dangerous artificial condition, *see Mann v. Shipley*, 80 *Cal.App.*2d 453, 181 *P.*2d 641, 643 (1947), defendants owed Vega a duty of reasonable care to protect against the risks of that condition.

Critics of imposing the general duty of reasonable care on landowners assert that the duty is nebulous and subjects landowners to unlimited liability. *See, e.g., Younce v. Ferguson*, 106 *Wash.*2d 658, 724 *P.*2d 991, 995 (1986). Those concerns, however, are inflated. A jury should be no less adept at applying the duty of reasonable care in a premises liability suit than in an ordinary negligence case. *Smith, supra*, 469 *F.*2d at 105; Carl S. Hawkins, *Premises Liability After Repudiation of the Status Categories: ·Allocation of Judge and Jury Functions*, 1981 *Utah L.Rev.* 15, 61 (1981) (concluding ordinary negligence principles have constrained jury discretion in premises liability cases in jurisdictions that abolished the classification system). Moreover, the burden on landowners is not excessive; they are merely required to take reasonable care to prevent foreseeable harm. *Smith, supra*, 469

*F*.2d at 106 ("[W]e do not hold that landowners are now insurers of their property, or that they must endure unreasonable burdens to maintain it." (footnote omitted)); *cf. Stewart v. 104 Wallace St., Inc.*, 87 *N.J.* 146, 158, 432 *A.*2d 881 ("We do not believe that the duty we are imposing on ... property owners will be an onerous one. The standard of care, after all, will be *reasonableness.*"). That is the duty landowners have in all other aspects of their lives. Eriksen, *supra*, 17 *St. Mary's L.J.* at 462.

The duty of reasonable care permeates our negligence jurisprudence. This Court should abolish the common-law classifications and impose the duty of reasonable care in premises liability cases as well.

### III

In recent years, this Court has been poised to abandon the common-law classification system and impose a general duty of reasonable care in premises liability cases.

The Court first questioned the viability of the common-law classifications forty-two years ago in *Taylor v. New Jersey Highway Auth.*, 22 *N.J.* 454, 126 *A.*2d 313 (1956). The Court declared: "In modern times the immunities have rightly, though gradually, been giving way to the overriding social view that where there is foreseeability of substantial harm landowners, as well as other members of society, should generally be subjected to a reasonable duty of care to avoid it." *Id.* at 463, 126 *A.*2d 313. Shortly thereafter, the Appellate Division noted the same trend. *See Simmel v. New Jersey Coop. Co.*, 47 *N.J.Super.* 509, 513, 136 *A.*2d 301 ("The jurisprudence of the past gave to the occupier of land a special privilege to be careless. But today the broad tendency of the law is to impose upon him, as upon other members of society, a duty to exercise reasonable care to avoid injury to others."), *rev'd on other grounds*, 28 *N.J.* 1, 143 *A.*2d 521 (1958). Although afterward this Court continued to adhere to the tripartite classification scheme, *see, e.g., Snyder, supra*, 30 *N.J.* at 312–13, 153 *A.*2d

1, the Court in *Taylor* laid the groundwork for the dismantling of the common-law classification system.

In *Renz, supra,* this Court again recognized the transformation in premises liability law. We acknowledged: "Traditionally, a landowner owed no duty to a trespasser other than to refrain from acts willfully injurious. Nevertheless, in the evolution of the common law of trespass some accommodation of negligence principles has occurred." 87 *N.J.* at 461, 435 *A.*2d 540 (citations omitted). One year later, we commented anew on the trend toward the demise of the common-law classification system in *Butler, supra.* We explained: "The historical classifications of the degrees of care owing to visitors upon land are undergoing gradual change in the law in favor of a broadening application of a general tort obligation to exercise reasonable care against foreseeable harm to others." *Id.* at 277, 445 *A.*2d 1141.

In *Hopkins, supra,* a case in which a real estate customer was injured during an open house, this Court concluded that the plaintiff's common-law classification was not relevant under the circumstances and imposed a duty of reasonable care on the real estate agency. Criticizing the classification scheme's obsolescence, the Court explained:

> Clearly, it is becoming difficult to define our modern circumstances by resort to the rigid constructs of the early common law. . . . Moreover, to analogize the status of the parties to the common law classifications holds no great comfort that the analysis will center on factors that will lead to a sound principle of tort liability. In determining premises liability "the common law rules obscure rather than illuminate the proper considerations which should govern determination of the question of duty."
>
> [*Id.* at 437–38, 625 *A.*2d 1110 (quoting *Rowland, supra,* 70 *Cal.Rptr.* 97, 443 *P.*2d at 568).]

So strong were our criticisms that one commentator believed that *Hopkins* nullified the tripartite common-law classification system in New Jersey. *See* Restieri–Heslin, *supra,* 24 *Seton Hall L.Rev.* at 2230.

In *Boyer v. Anchor Disposal,* 135 *N.J.* 86, 90, 638 *A.*2d 135 (1994), when discussing the tripartite classification scheme, we noted: "New Jersey's legal climate has not been congenial to

distinctions based on status." In *Brett, supra,* 144 *N.J.* at 508–09, 677 *A.*2d 705, the Court again refused to employ the classification scheme in determining that the defendant owed a duty to the plaintiffs. Likewise, in *Kuzmicz, supra,* 147 *N.J.* at 515–17, 688 *A.*2d 1018, this Court recognized the secondary nature of the classification system and did not refer to the plaintiff's status when holding that the defendant owed the plaintiff no duty. In *Clohesy, supra,* 149 *N.J.* at 515, 694 *A.*2d 1017, while the Court acknowledged the injured party's invitee status, the assessment of responsibility and liability did not rely heavily on that fact. In short, since 1956 we have steadily moved toward the abrogation of the tripartite classification system.

In light of this trend, last year the Appellate Division abolished the premises liability classification scheme and replaced it with a duty of reasonable care under all the surrounding circumstances. Writing for the court in *Ocasio v. Amtrak,* 299 *N.J.Super.* 139, 690 *A.*2d 682 (App.Div.1997), Judge Skillman explained:

> [W]e conclude that even though the rules of landowners' liability predicated on the common law classifications of trespasser, licensee and invitee described in the second Restatement of Torts may provide guidance in determining whether a duty of reasonable care should be imposed in particular circumstances, this determination should ultimately turn on the factors identified in *Hopkins* and applied in *Brett,* that is, the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.
>
> [*Id.* at 149–50, 690 *A.*2d 682 (citations omitted).]

Great Britain, the birthplace of the common-law classifications, abolished the licensee-invitee distinction in 1957. *Hopkins, supra,* 132 *N.J.* at 437, 625 *A.*2d 1110. Two years later, the United States Supreme Court disparaged the classification scheme and refused to import it into admiralty law. *See Kermarec, supra,* 358 *U.S.* at 630–32, 79 *S.Ct.* at 410, 3 *L. Ed.*2d at 554–55. Moreover, Alaska, California, Hawaii, Louisiana, Montana, Nevada, New Hampshire, and New York have fully forsaken the classification scheme. *See Webb, supra; Rowland, supra; Pickard, supra; Cates, supra; Limberhand, supra; Moody, supra; Ouellette, supra; Basso, supra.* Many other states have annulled the invitee-

licensee distinction but continue to distinguish trespassers from people who have permission to enter the land. *See Jones, supra; Poulin v. Colby College*, 402 *A.*2d 846 (Me.1979); *Mounsey, supra; Peterson, supra; Heins v. Webster County*, 250 *Neb.* 750, 552 *N.W.*2d 51 (1996); *Ford v. Board of County Comm'rs of County of Dona Ana*, 118 *N.M.* 134, 879 *P.*2d 766 (1994); *O'Leary v. Coenen*, 251 *N.W.*2d 746 (N.D.1977); *Hudson v. Gaitan*, 675 *S.W.*2d 699 (Tenn.1984); *Antoniewicz v. Reszcynski*, 70 *Wis.*2d 836, 236 *N.W.*2d 1 (1975); *Clarke v. Beckwith*, 858 *P.*2d 293 (Wyo.1993); *cf. Wood v. Camp*, 284 *So.*2d 691 (Fla.1973) (abolishing distinction between commercial visitors and social guests but retaining the distinction between invitees and uninvited licensees).[4]

When describing the legal trend to impose a single duty of reasonable care upon landowners regardless of the entrant's status, the majority opines that "[t]he glacial pace of the law has not yet traversed the 'morass' of common-law classifications." *Ante* at 502, 713 *A.*2d at 445. It has been forty-two years since this Court foresaw the demise of the tripartite classification system, and since that time many jurisdictions have abandoned the. common-law classifications. The time has come for this State to impose a single duty of reasonable care on landowners.

## IV

Although I agree that Vega's reckless conduct requires summary judgment for defendants, I do not believe that proximate cause is the proper basis on which to grant it. Instead, defendants' summary judgment motion should have been granted because Vega's negligence exceeds defendants' negligence as a matter of law.

Defining proximate cause, this Court wrote that

---

[4] Because I believe that the flaws of the classification system extend beyond the invitee-licensee distinction, I would abolish it in its entirety. This case, in which Vega is described as a "trespasser," underscores the inherent difficulty in maintaining even the classification based on permission.

a tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries. The fact that there were also intervening causes which were foreseeable or were normal incidents of the risk created would not relieve the tortfeasor of liability.

[*Rappaport v. Nichols*, 31 *N.J.* 188, 203, 156 *A.*2d 1 (1959) (citations omitted).]

*See also Bendar v. Rosen*, 247 *N.J.Super.* 219, 229, 588 *A.*2d 1264 (App.Div.1991) ("To be a proximate cause ... conduct need only be a cause which sets off a foreseeable sequence of consequences, unbroken by any superseding cause, and which is a substantial factor in producing the particular injury."). Unless Vega's injury was a foreseeable consequence of defendants' allegedly tortious act, defendants did not proximately cause Vega's injuries. Foreseeability relates to " 'the question of whether the specific act or omission of the defendant was such that the ultimate injury to the plaintiff' reasonably flowed from defendant's breach of duty." *Clohesy, supra*, 149 *N.J.* at 503, 694 *A.*2d 1017 (quoting *Hill v. Yaskin*, 75 *N.J.* 139, 143, 380 *A.*2d 1107 (1977)).

"The tortfeasor need not foresee the precise injury; it is enough that the type of injury be within an objective realm of foreseeability." *Yun v. Ford Motor Co.*, 276 *N.J.Super.* 142, 159, 647 *A.*2d 841 (1994) (Baime, J., concurring and dissenting) (internal quotations omitted), *rev'd*, 143 *N.J.* 162, 669 *A.*2d 1378 (1996). It is not necessary for defendants to have foreseen the particular manner in which Vega suffered his injury. Although Vega's brash attempt to leap over the air shaft may not have been readily foreseeable, it is highly foreseeable that someone could fall down the air shaft if given access to the roofs.

In *Yun v. Ford Motor Co.*, 143 *N.J.* 162, 669 *A.*2d 1378 (1996), this Court held that a defectively manufactured tire assembly was the proximate cause of the fatal injuries of a plaintiff who was struck by a car when he ran across the Garden State Parkway in an attempt to retrieve a spare tire that had fallen off his daughter's van. Although the plaintiff's reaction to the tire falling on the parkway was rash and outlandish, this Court held that the defendants were not entitled to summary judgment on the basis of

proximate cause. *Ibid.* This Court determined that the question of foreseeability was a debatable one that should have been resolved by a jury. *Ibid.*

Similarly, in this case Vega's conduct should not be deemed indisputably unforeseeable. If a roof, to which people have access, does not have a barrier that prevents people from falling off, the landowner can anticipate that someone on the roof can fall and plunge to the ground.

Defendants' deposition testimony suggests that they foresaw the risk that someone could fall from the roof. Robert Piedilato, the owner of the building at 685 State Street, testified that he frequently replaced the lock on the door leading to the roof of his building because tenants often sabotaged the lock and propped the door open. Wayne Puff, an owner of the building at 687 State Street, testified that he made sure the doors leading to the roof of his building were locked. A rational jury can infer that the reason why defendants attempted to lock the doors accessing the roofs was that they feared someone could fall from the roofs.

In addition, Vega's attempt to jump over the air shaft is not, as a matter of law, a superseding cause of injury that relieves defendants of potential liability. "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Restatement, supra*, § 440. But, because defendants' omissions increased, if not created, the risk that Vega would fall down the air shaft, Vega's conduct cannot be a superseding cause.

[W]here the negligent conduct of an actor either creates or increases the foreseeable risk of harm through the intervention of another force and itself is a substantial factor in causing the harm, then such intervention of any nature whatsoever is *not* a superseding cause and the actor is not relieved of responsibility.

[Stuart M. Speiser, et al., 3 *The American Law of Torts* § 11.10, at 421 (1986).]

Had defendants prevented people from reaching their buildings' roofs, as plaintiff alleges they should have, Vega could not have fallen down the air shaft. Consequently, his act was not a

superseding cause of his injuries. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 65, at 452 (criticizing courts that find plaintiff's negligence a superseding cause insulating defendant from liability). Further, as suggested by the text of Section 440 of the *Restatement*, the doctrine of superseding cause best applies to acts of third parties or other forces.

When the plaintiff's conduct is at issue, the doctrine of comparative negligence is the best framework within which to determine whether the plaintiff's actions preclude his or her recovery in tort. *See Yun, supra*, 276 *N.J.Super.* at 161, 647 *A.2d* 841 (Baime, J., concurring and dissenting) (stating plaintiff's running across the Garden State Parkway in order to recover a dislodged spare tire, if negligent, should "be reflected within the calculus of comparative fault"). Of course, the plaintiff's conduct is the focus of the comparative negligence inquiry. Rather than attempt to force the issue of Vega's conduct into the rubric of proximate cause, I believe the Court should ask the more natural question—whether Vega's attempted leap over the air shaft makes him more negligent than defendants as a matter of law.

The Comparative Negligence Act provides that a plaintiff's "negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought or was not greater than the combined negligence of the persons against whom recovery is sought." *N.J.S.A.* 2A:15–5.1. Thus, when the plaintiff's negligence exceeds each defendant's negligence or the defendants' combined negligence, the plaintiff's cause of action cannot be sustained.

Although the Comparative Negligence Act "was intended to ameliorate the harshness of contributory negligence," *Ostrowski v. Azzara*, 111 *N.J.* 429, 437, 545 *A.2d* 148 (1988), the doctrine of comparative negligence does not guarantee a jury trial for foolhardy plaintiffs whose injuries were secondarily caused by another negligent party. Summary judgment for the defendant is appro-

priate in a case where a plaintiff's negligence is so great that no reasonable juror can conclude that his or her negligence did not exceed the defendant's negligence.

Permitting a court to grant summary judgment for a defendant on the basis of the plaintiff's comparative negligence comports with our summary judgment jurisprudence. *See Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). When the competent evidence presented viewed in the light most favorable to the non-movant yields "a single, unavoidable resolution of the alleged disputed issue of fact," the court should grant summary judgment. *Ibid.* When evidence of the plaintiff's negligence is sufficiently strong to forbid a rational factfinder from concluding that the plaintiff's negligence did not exceed the defendant's negligence, the court should enter summary judgment for the defendant.

Undoubtedly, questions pertaining to the existence and extent of negligence typically belong in the province of the jury. *See, e.g., Sibley v. City Serv. Transit Co.,* 2 *N.J.* 458, 465, 66 *A.*2d 864 (1949). Issues pertaining to negligence defenses, including comparative negligence, "are jury questions and ... a court should not take the place of a jury in solving them except in plain and indisputable cases." *Taylor v. Bolton,* 121 *Ga.App.* 141, 173 *S.E.*2d 96, 98 (1970). When there is no disputed issue of material fact, however, the factfinding role of the jury becomes superfluous. *See Brill, supra,* 142 *N.J.* at 540–41, 666 *A.*2d 146. Though three states' negligence statutes mandate that evaluations of the plaintiff's negligence always be resolved by the jury, Victor E. Schwartz, *Comparative Negligence* § 17–3, at 358–59 (3rd ed.1994) (citing statutes from Arizona, Nebraska and Oklahoma), our Comparative Negligence Act does not contain an analogous provision. Accordingly, the comparative negligence statute implicitly permits courts to enter summary judgment in the defendant's favor in the extraordinary case where no rational juror could conclude that the plaintiff's negligence did not exceed the defendant's negligence.

This case presents the exceptional instance in which the plaintiff's negligence should, as a matter of law, bar his negligence cause of action. Even assuming that defendants were negligent in failing to prevent access to their roofs and not erecting fences around the air shaft, a rational factfinder must conclude that Vega's negligence exceeds their aggregate negligence. As noted by the majority, the lone witness to observe Vega's accident clearly testified at a deposition that Vega was aware of the air shaft and consciously tried to vault over it, rather than run around it. According to the uncontradicted evidence, Vega ran toward the air shaft and intended to jump over it. He fell when his attempt failed. When Vega reached the air shaft, he tripped and fell four stories. The fact that Vega shouted an expletive when he tripped suggests that Vega appreciated the extreme risk he undertook. Vega's undertaking to leap over the air shaft was utterly brash. His failure to exercise due care by intentionally disregarding an obvious danger amounted to gross negligence and recklessness. The tremendous risk Vega undertook vastly exceeds the risk caused by defendants' acts and omissions. When comparing Vega's tragic aborted leap to defendants' failure either to prevent access to the roof or build fences by the air shaft, no rational factfinder could conclude that defendants' negligence equaled or exceeded Vega's negligence. Consequently, this Court should have held that Vega's comparative negligence is the proper basis on which to enter summary judgment for defendants.

## V

Because the majority continues to retain the antiquated common-law premises liability classifications and concludes that defendants' omissions were not the proximate cause of Vega's injuries, I cannot join the opinion of the Court. However, because I conclude that Vega's negligence exceeds defendants' as a matter of law, I concur in the result.

Justice HANDLER concurs in result.

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.